**In re ADMINISTRATIVE APPEAL OF the TERMINATION OF EMPLOYMENT, by Stephen Rathke, County Attorney and Department Head of B. Jean Black.**

No. C7–85–712.

Court of Appeals of Minnesota.

Oct. 1, 1985.
Review Denied Dec. 13, 1985.

Stephen R. Van Drake, Van Drake & Van Drake, Ltd., Brainerd, for appellant.

Stephen C. Rathke, Crow Wing Co. Atty., Brainerd, for respondent.

Considered, and decided by POPOVICH, C.J., SEDGWICK and LANSING, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Relator Jean Black, by a writ of certiorari, appeals a decision of the Crow Wing Board of Commissioners terminating her as an assistant county attorney. While an independent referee had recommended, following a four day hearing, that Black not be removed, this recommendation was rejected by the Crow Wing County Personnel Committee and the County Board. On appeal, Black contends her removal for cause was not supported by the evidence. We affirm.

## FACTS

Jean Black was hired as an assistant county attorney by the Crow Wing County Attorney. First she worked as a law clerk until admitted to the Minnesota Bar on October 15, 1982. Black was assigned to the Human Services Department, representing the agency in paternity adjudica-

tions, child support enforcement, termination of parental rights petitions, mental illness, chemical dependency commitments, child dependency and neglect matters, IV.D. hearings, administrative appeals and probate proceedings. She officed in the human services building, located away from the county attorney's office.

Although the advertisement for the position in her law school placement newsletter did not specifically indicate the job entailed litigation, Black was aware the job required some trial work. When interviewed, she also expressed an interest in trial work.

While serving as a law clerk waiting for bar exam results, she observed other attorneys perform the duties she would be doing, including court appearances. The county attorney did not personally observe her in court after her first 30 days of employment. Black consulted with the county attorney's staff and attended numerous continuing legal education seminars. By January 1984, she successfully completed a probationary period and had never been reprimanded, orally or in writing, for job performance. The county attorney never completed an evaluation of her. Wayne Larson, Director of Social Services, evaluated her performance on March 3, 1983 and May 22, 1984 and noted satisfactory performance. He did not attempt to evaluate her trial skills.

Black was diligent in office skills, hard working, interacted well with social services staff and law enforcement officials and was well-liked. She was excellent at mitigating and settling disputes. Approximately 85 percent of her cases were settled prior to court appearances. She devoted many non-working hours to committees and community organizations related to her job, serving on a Guardian Ad Litem Task Force, the Rulemaking Advisory Committee for Medical Assistance, participating in sexual abuse education, serving on the Brainerd State Hospital Advisory Board and on a child protection team.

In January 1984, the county attorney became aware Black was having some trial problems. He met with her and told her to observe other attorneys in court and attend appropriate seminars. He followed the "sink or swim" method of learning and believed the best method of learning trial skills was by doing them. He discussed her trial abilities with attorneys who opposed her in court and with judges before whom she appeared rather than personally observing her.

In late March 1984 he again met with Black and informed her that her trial skills were deficient. He suggested she may need to find other employment by the end of the year. No formal plan for developing trial skills was proposed and although she requested assistance, no other assistant county attorney ever went to court with her.

They met again in April 1984 and he told her that her trial skills were poor, which decreased her effectiveness as a negotiator. In June 1984, her position was placed in the county merit system classification.

On October 19, 1984 she was terminated effective December 1, 1984 because of inability to introduce evidence and to examine witnesses. Subsequently the county attorney learned of an incident involving Black and Judge Robert E. Kautz. Kautz suggested in court Black not address an adult social worker by her first name. She responded by accusing the judge of violating decorum rules by not wearing a robe at the commitment hearing. Black later wrote Judge Kautz enclosing a copy of a manual for beginning attorneys on how to conduct trial examination. She wrote the judge's behavior was inappropriate and rude and concluded, "Because I do not appreciate your rudeness and consider it highly improper, I will be documenting any and all occurrences by letter to you, and if the rudeness does not cease, I will consider taking further steps by bringing this situation to the attention of D.J. Hanson, Court Administrator." A second termination letter of October 25, 1984 chided Black for being unaware of Uniform Decorum Rule 16, for unprofessional remarks to the judge, and for using County Attorney sta-

tionery to respond. This incident was a separate ground for termination.

Black demanded a personnel committee hearing, a County Board organization carrying out the personnel functions and policies of the Board, pursuant to the county personnel policy manual. The manual provides for employee termination for "just cause." The personnel committee appointed a referee to conduct a hearing. Following four days of hearings, the referee found (a) Black's trial skills were below average in examining witnesses and introducing evidence, (b) trial skills are essential to the position, (c) the county attorney was not acting in retaliation, in bad faith, and was not abusive, dishonest or fraudulent, but concluded the lack of trial skills were correctable and just cause did not exist to discharge her. The referee noted she did not receive day-to-day supervision, was never observed in court by the county attorney after her first 30 days of employment, and the probationary period was not used to determine her fitness.

The personnel committee discussed the referee's recommendations, disagreed that Black's deficient trial skills were insufficient grounds to terminate employment, and recommended to the county board the termination be upheld and determined Black was an "at will" employee who could be fired without cause, rejecting the referee's contrary determination on this issue. The county board accepted the personnel committee's recommendation and voted to uphold the termination. Black seeks vacation of the board's decision and reimbursement for attorney's fees and costs.

### ISSUES

1. Was Black an at-will employee under Minn.Stat. § 388.10?

2. Is there substantial evidence to support a determination of just cause and termination?

### ANALYSIS

■ 1. Respondents initially contend Black was employed at-will and was remov-

able with or without cause. Minn.Stat. § 388.10 (1984) states:

> The county attorney of any county in this state * * * is hereby authorized to appoint, with the consent of the county board of the county, one or more attorneys to assist him in the performance of his duties. Each assistant shall have the same duties and be subject to the same liabilities as the county attorney and *hold office during the pleasure of the county attorney.*

*Id.* (emphasis added). Serving at the "pleasure" of the county attorney is synonymous with removal at the pleasure of the county attorney. *See State ex rel. Stubben v. Board of County Commissioners of Hennepin County,* 273 Minn. 361, 368, 141 N.W.2d 499, 504 (1966).

However, the statute is not controlling because the county adopted a personnel policy manual covering classification, compensation, recruitment, promotions, transfers, training, salary, and adjustments, including a section entitled "appeals" which provided: "no permanent employee under the provision of these rules shall be removed, discharged, or suspended without pay for more than 30 days, or reduced in pay or position, *except for cause*" (emphasis added). The referee determined by adopting the policy manual, Black could not be discharged merely because the county attorney was no longer satisfied with her job performance. This interpretation is dictated by *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983). We agree the policy manual constitutes a binding unilateral contract and is enforceable as part of the employment contract.

Respondents agree Black is subject to the manual but contend the termination procedures did not apply because the manual contains a subheading "Positions Covered by These Rules" which states:

> 1. These rules, regulations, and policies shall apply to all employees of the County government under the direct and indirect jurisdiction of the County Board, unless inconsistent with the provisions of state or federal laws affecting County

employment and provisions contained in labor agreements with County employees.

2. These rules, regulations, and policies shall be applicable to all County employees unless excluded by a County Board resolution.

Respondents contend this language refers to the at-will provisions contained in Minn. Stat. § 388.10. The clause was obviously intended to avoid inadvertent violations of statutes but does not except the "just cause" manual provision. If the county wanted to fire an assistant county attorney exempted from the "just cause" personnel policy, it could clearly have done so. Moreover, we note at the special personnel committee meeting on January 25, 1985, the county attorney urged the committee not to concern itself with § 388.10 because at issue was the county's personnel policy manual.

■ 2. The primary issue is whether there is substantial evidence to support the board's finding and conclusions that just cause existed to remove Black. *See Gibson v. Civil Service Board*, 285 Minn. 123, 125, 171 N.W.2d 712, 714 (1969).

In urging the personnel committee to reject the referee's conclusion, the county attorney pointed out the referee found Black deficient in trial skills, namely examining witnesses and introducing evidence. He disagreed with the referee's conclusion that "providing unsatisfactory services is not necessarily sufficient grounds for the County Attorney to discharge an assistant county attorney" and contended an assistant county attorney cannot be a good negotiator and lack trial skills. The personnel committee essentially adopted his arguments in recommending that Black's termination be confirmed.

"Cause," or "sufficient cause," means "legal cause," and not any cause which the council may think sufficient. The cause must be one which specially relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public. The cause must be one touching the qualifications of the officer or his performance of its duties, showing that he is not a fit or proper person to hold the office. An attempt to remove an officer for any cause not affecting his competency or fitness would be an excess of power, and equivalent to an arbitrary removal. In the absence of any statutory specification the sufficiency of the cause should be determined with reference to the character of the office, and the qualifications necessary to fill it." *State ex rel. Hart v. Common Council*, 53 Minn. 238, 244, 55 N.W. 118, 120 (1893).

The referee found that "[t]rial skills are essential to satisfactory performance of the trial aspects of Black's position." Every aspect of Black's job involved a court proceeding or preparation for a court proceeding even if cases were eventually settled. The responsibilities involved such highly sensitive areas as termination of parental rights and child neglect cases. Many cases are of an "emergency" nature and an assistant county attorney must be able to proceed with minimal preparation against highly skilled trial lawyers. The lack of skills in examining witnesses and laying a foundation in introducing evidence is of a substantial nature and essential to the position.

The referee resolved testimonial conflicts and determined the weight to be given. He found specifically a lack of trial skills. Considering her length of service, the number of court appearances, and the trials she participated in, Black had ample opportunity to develop basic trial skills which are essential. The record supports a finding her trial skills were deficient.

This is not a case where the personnel committee provided no reasons for rejecting the referee's conclusions. *See Burnett v. Stearns County Welfare Board*, 370 N.W.2d 452 (Minn.Ct.App.1985); *Five Star Trucking, Inc. v. Minnesota Transportation Regulation Board*, 370 N.W.2d 666 (Minn.Ct.App.1985). The personnel committee's recommendation to the county board contains adequate reasons why it

rejected the referee's conclusion just cause did not exist. Because of our limited scope of review of an administrative agency decision, we cannot say the action was arbitrary or capricious, that just cause did not exist, or that the record was insufficient to support the findings made.

### DECISION

We agree Black's deficient trial skills support the county board's determination that just cause existed to remove her from the position of assistant county attorney. Black was not an at-will employee under Minn.Stat. § 388.10 because the personnel policy manual required just cause to terminate employment.

Affirmed.