**John William RUTHERFORD,**
**Appellant,**

v.

**The COUNTY OF KANDIYOHI, et al.**
**and The Honorable Allan D.**
**Buchanan, et al., Respondents.**

No. C7–89–1254.

Court of Appeals of Minnesota.

Dec. 19, 1989.

Review Denied Feb. 28, 1990.

Daniel D. Reisman, Minneapolis, for appellant.

Robert G. Haugen, Minneapolis, for respondent, County of Kandiyohi.

Hubert H. Humphrey, III, Atty. Gen., Peter M. Ackerberg, Sp. Asst. Atty. Gen., St. Paul, for respondent, Buchanan.

Heard, considered and decided by NORTON, P.J., and SCHUMACHER and FLEMING,* JJ.

## OPINION

WILLIAM J. FLEMING, Judge.

John Rutherford appeals from a judgment dismissing all five of his causes of action against the respondents. We affirm.

## FACTS

In May 1987, appellant John Rutherford brought suit against the respondents for their participation in discharging him from employment as a probation officer in Kandiyohi County. Rutherford's termination letter stated:

The reasons for your termination are as follows:

1) You committed misconduct by representing the state of your health at the time of your application for the position of Probation Officer in January, 1981. At the time of that application, you represented to the appointing authority that your health was "excellent." In fact, you had been hospitalized for an extended period for paranoid schizophrenia in 1968 or 1969, and had been receiving periodic counseling treatment for that condition until, and after, your application for the position of probation officer.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

We believe your mental condition has directly affected the performance of your duties.

The respondents moved for summary judgment. The trial court granted the respondents' motion, ordering that the suit be dismissed. Rutherford now appeals from the judgment which followed.

### ISSUES

1. Did appellant possess a property right to continued employment?

2. Did appellant raise a sufficient inference of discrimination so as to preclude summary judgment?

3. Did appellant's defamation claim fail due to absolute or qualified privilege?

### ANALYSIS

On a preliminary note, all five causes of action rest upon the premise that Rutherford should not have been discharged in the manner that he was. It is evident that Kandiyohi County did not participate in the termination decision. Therefore, summary judgment on all counts was properly granted on Rutherford's claims against the county. We need only examine whether summary judgment was properly granted on Rutherford's claims against the state respondents, i.e., Judge Bodger, Judge Buchanan, and the Kandiyohi County Court.

### I. SECTION 1983 CLAIM

█ Rutherford's first cause of action alleges a claim under 42 U.S.C. § 1983. Rutherford claims that he possessed a property right to continued employment as a Kandiyohi County probation officer and that he was deprived of this right without due process of law in contravention of the fourteenth amendment of the United States Constitution. The threshold question be-

fore us is whether Rutherford possessed a property interest in continued employment. Rutherford concedes that he was hired as an at-will employee, and, as such, he originally possessed no right to continued employment.[1] However, he maintains that subsequent acts by the respondents created a unilateral contract which restricted the respondents' right to summarily discharge him at will.[2]

#### 1. Distribution of Personnel Manual

█ Rutherford argues that his employment agreement was changed by the county's distribution of a personnel handbook. Rutherford was given a copy of this handbook by the county coordinator in December 1984. Minnesota law recognizes that a personnel handbook distributed after employment begins may become a part of an employee's contract of employment. *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 627 (Minn.1983). However, the requisite elements of offer, acceptance and consideration must still be satisfied. *Id.* at 626–627. In this case, the state respondents correctly argue that the distribution of the employee handbook by the county coordinator did not constitute an offer by the state. There is no evidence that the state participated in the handbook distribution. The state respondents cannot be held accountable for the independent acts of the county.

#### 2. Correspondence

Rutherford asserts that even if distribution of the handbook did not alter his employment contract, subsequent correspondence by the district court extended employment rights to him. Rutherford argues that three letters by the county court, taken together, communicated an offer to grant Rutherford greater job security.

---

**1.** Minn.Stat. § 260.311, subd. 1 (1988) provides that county probation officers serve "during the pleasure of the court." Under this statute, probation officers are at-will employees, unless otherwise provided by contract. *See In re Administrative Appeal of the Termination of Employment,* 374 N.W.2d 754, 756 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Dec. 13, 1985). At-will employees have no property interest in con-

tinued employment. *Skeets v. Johnson,* 816 F.2d 1213, 1215 (8th Cir.1987).

**2.** The parties do not agree as to whether Rutherford was a county or state employee. We find that with respect to job security, Rutherford was a state employee. *See* Minn.Stat. § 260.311, subd. 1; *see also In the Matter of Johnson,* 358 N.W.2d 469, 472 (Minn.Ct.App.1984).

■ The first letter, which provided a notice of intent to discharge, informed Rutherford that he had a right to request a hearing regarding his intended discharge and that failure to request a hearing within 60 days would constitute a waiver of his right to a hearing. This letter was sent when the judges were under the mistaken belief that Rutherford was entitled to the benefit of the Veteran's Preference Act. A letter which merely advises an individual of his perceived statutory rights does not constitute a contractual offer. The letter does not contain the "indicia of intent to contract." *See Cederstrand v. Lutheran Brotherhood,* 263 Minn. 520, 533, 117 N.W.2d 213, 222 (1962). The second letter fails for the same reason.

■ The final letter was written in response to Rutherford's request that personnel policies and procedures be adopted by the Eighth District. Judge Richard Bodger, Chief Judge of the Eighth District, stated that he believed county policies would govern Rutherford's employment rights. Judge Bodger further expressed his belief that, in the past, the Eighth District had acted in accord with various county policies. These expressions of opinion do not set forth a contractual offer. The statements are indefinite and, if anything, merely establish general statements of policy. *Pine River,* 333 N.W.2d at 626.

Assuming, arguendo, that the Bodger letter did constitute a contractual offer, there was no consideration. When Rutherford received the letter, he was already suspended, pending the outcome of his discharge proceedings.

The correspondence, therefore, did not alter Rutherford's at-will employment agreement. Rutherford had no property right to continued employment. His § 1983 action is defeated.

## II. DUE PROCESS CLAUSE OF MINNESOTA CONSTITUTION

Rutherford's complaint also alleges a deprivation of property in violation of the due process clause of the Minnesota Constitution. On appeal, Rutherford makes no argument challenging the trial court's grant of summary judgment on this cause of action. Therefore, the issue is waived. *Melina v. Chaplin,* 327 N.W.2d 19, 20–21 (Minn.1982).

## III. DISCRIMINATION

Rutherford's fourth cause of action rests upon the Minnesota Human Rights Act. Rutherford claims that the respondents discharged him because of disability, in violation of Minn.Stat. § 363.03, subd. 1(2) (1986). In addressing this claim, we must apply a three-stage analysis which was first enunciated by the United States Supreme Court and later adopted by the Minnesota Supreme Court. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973); *Danz v. Jones,* 263 N.W.2d 395, 399 (Minn.1978).

### A. Prima Facie Case

■ We first examine whether Rutherford has established a prima facie case. A prima facie case may be established by direct evidence of discrimination. *Sigurdson v. Isanti County,* 386 N.W.2d 715, 720 (Minn.1986). Alternatively, it may be established by showing

(1) that the employee was a member of the protected class, (2) that the employee was qualified for the position held, (3) that the employee was discharged, and (4) that the employer assigned a nonmember of the protected class to do the same work.

*Rademacher v. FMC Corp.,* 431 N.W.2d 879, 882 (Minn.Ct.App.1988); *Hubbard v. United Press International Inc.,* 330 N.W.2d 428, 442 (Minn.1983).

### 1. Direct Evidence

■ Rutherford contends that direct evidence establishes a prima facie case of discrimination. He asserts that the termination letter and remarks made by Judge Bodger show overt discrimination. This argument is without merit. The termination letter, while referring to Rutherford's mental condition of paranoid schizophrenia, expressed no bias against individuals with such an impairment. Rather, the letter indicates concern with Rutherford's job performance. *Compare Wilson v. City*

*of Aliceville,* 779 F.2d 631, 634–35 (11th Cir.1986) (employer made racial slur); *Buckley v. Hospital Corp. of America, Inc.,* 758 F.2d 1525, 1530 (11th Cir.1985) (employer commented on plaintiff's advancing age, indicated that he planned to hire younger employees, and stated that "new blood" was needed); *Ramirez v. Sloss,* 615 F.2d 163, 169 (5th Cir.1980) (written personnel policy expressly disqualified non-citizens of the United States); *Gunther v. Iowa State Men's Reformatory,* 612 F.2d 1079, 1085 (8th Cir.1980) (employer admitted that it discriminated on the basis of sex), *cert. denied,* 446 U.S. 966, 100 S.Ct. 2942, 64 L.Ed.2d 825 (1980). Here, the termination letter never expressed that schizophrenia was a disqualifying characteristic in and of itself. In this significant respect, it is unlike the evidence in the above-cited cases. The letter does not directly demonstrate discriminatory intent.

Likewise, Judge Bodger's remarks do not provide direct evidence of discrimination. Judge Bodger commented that Rutherford had health problems and exhibited abnormal conduct. While this evidence indicates that Judge Bodger perceived Rutherford as having a mental impairment, it does not directly establish discrimination.

### 2. *Hubbard Standards*

The trial court determined that even if there is no direct evidence of discrimination, Rutherford has established a prima facie case under the standards enunciated in *Hubbard.* The respondents maintain that the first two standards were not met.

▪ Under the first standard, Rutherford must show that he was a member of a protected class. The Minnesota Human Rights Act protects those who suffer from "disability." Minn.Stat. § 363.03. Disability is defined by Minn.Stat. § 363.01, subd. 25 (1986) as:

> [A]ny condition or characteristic that renders a person a disabled person. A disabled person is any person who (1) has a physical or mental impairment which substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.

Rutherford has never claimed that at the time of discharge he was suffering from a physical or mental impairment which substantially limited a major life activity. Therefore, we need only consider whether Rutherford had a record of such impairment or was regarded as having such impairment. We find that Rutherford has made a sufficient showing with regard to these issues, in light of his prior hospitalization for paranoid schizophrenia and the general perception by his superiors that he was schizophrenic. *See School Board of Nassau County v. Arline,* 480 U.S. 273, 281, 107 S.Ct. 1123, 1127, 94 L.Ed.2d 307 (1987); *State by Cooper v. Hennepin County,* 441 N.W.2d 106, 111 (Minn.1989).

▪ The second standard under *Hubbard* requires the employee to show that he was qualified for the position held. *Hubbard,* 330 N.W.2d at 442. Rutherford has carried his initial burden with respect to qualifications. His training and experience appear adequate. The fact that Rutherford was hired and then retained for several years demonstrates that he had the basic qualifications for the position at the time of discharge. *See Loeb v. Textron, Inc.,* 600 F.2d 1003, 1013 n. 10 (1st Cir.1979). We reserve consideration of Rutherford's job performance until the later stages of the *McDonnell Douglas* analysis. *See* Bienkowski v. American Airlines, *851 F.2d 1503, 1506 (5th Cir.1988).*

### B. *Legitimate Reason*

▪ The burden now shifts to the respondents, who must articulate a legitimate reason for discharging Rutherford. The respondents articulate two reasons: (1) misrepresentation and (2) poor job performance. As for misrepresentation, the respondents assert that Rutherford represented his health as "excellent" when in fact he had been treated for psychological impairment both before and after he was hired for his position. As for poor job performance, the respondents recite a litany of incidents which, in their opinion, reflect Rutherford's poor judgment, unrelia-

bility and unsuitability. For example, Rutherford signed the names of the respondent judges to orders and documents without permission. He recommended dispositional programs to the judges which were non-operational. Certain remarks made by Rutherford to clients were perceived as inappropriate. Overall, Rutherford experienced trouble getting along with people; he was disliked by numerous other employees.

These reasons for discharge are legitimate; the respondents' burden under *McDonnell Douglas* is satisfied.[3]

### C. *Pretext*

■ The burden now shifts back to Rutherford, who must establish that the respondents' reasons for discharging him are pretextual. Rutherford may satisfy this burden by showing that his employer's explanation is unworthy of credence. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *see Anderson v. Hunter, Keith, Marshall & Co.*, 401 N.W.2d 75, 79 (Minn.Ct.App.1987), *aff'd in part, rev'd in part*, 417 N.W.2d 619 (Minn.1988).

■ Rutherford has failed to present sufficient proof of pretext with respect to job performance. In particular, Rutherford does not really dispute the fact that he had poor working relationships with other employees. Rutherford appears to have been stripped of his supervisory authority because of his inability to work with others. When matters did not improve, he was dismissed. Rutherford has failed to establish that incompatibility was a pretextual reason for discharge.

Additionally, Rutherford admits he signed the names of the judges to court documents. He does not dispute his responsibility for juvenile referrals to non-operational programs. Rutherford has offered no evidence to suggest these reasons for termination are pretextual. There is no indication that other probation officers were treated differently for similar instances of bad judgment.

**3.** We recognize that subjective factors, such as likeability, should be closely scrutinized as they present opportunities for abuse. *O'Connor v.*

Because Rutherford fails to satisfy his burden under the *McDonnell Douglas* pretext stage of analysis, summary judgment was properly granted. Rutherford has not adequately demonstrated discriminatory intent.

### IV. WRONGFUL DISCHARGE

■ Rutherford's complaint alleges a separate cause of action for wrongful discharge. As noted earlier, Rutherford was an at-will employee. An employee at will may be discharged for any reason or no reason at all, with certain exceptions. *Bakker v. Metropolitan Pediatric, P.A.*, 355 N.W.2d 330, 331 (Minn.Ct.App.1984). None of these exceptions are applicable to Rutherford's situation. The trial court properly granted summary judgment with regard to this cause of action.

### V. DEFAMATION

The final cause of action alleges a claim of defamation. For a statement to be defamatory, it must (1) be communicated to a third party, (2) be false, and (3) tend to harm the individual's reputation and to lower him in the estimation of the community. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980). In this case, Rutherford contends that his notice of termination was defamatory in that it suggested he lied and that he was schizophrenic. Rutherford relies upon the compelled self-disclosure doctrine to satisfy the "communication" element of his claim. He claims that he was forced to disclose the contents of the termination letter to prospective employers and that the respondents should have known this would occur. The record adequately supports Rutherford's allegations.

■ The respondents argue that the notice of termination was a public document and that statements regarding public documents are absolutely privileged communications. Under absolute privilege, liability does not attach even if the communication

*Peru State College*, 781 F.2d 632, 637 (8th Cir. 1986); *Patterson v. Masem*, 774 F.2d 251, 256 (8th Cir.1985).

was intentionally false and motivated by malice. *Matthis v. Kennedy,* 243 Minn. 219, 223, 67 N.W.2d 413, 416 (1954).

The respondents are correct in stating that the notice of termination was a public document. At the time of Rutherford's discharge, public access to records maintained by the judicial branch of the State of Minnesota were governed by the Interim Rules on Access to Public Records.[4] Under Rule 3, subd. 2(c) (1986):

> [T]he following information is public: * * * *the final disposition of any disciplinary action and supporting documentation* * * *.

(Emphasis added.) Here, the notice of termination was the "final disposition" of the disciplinary action. The present litigation will not change Rutherford's employment status. The disciplinary outcome cannot be reversed or modified by subsequent legal proceedings. *Compare, Annandale Advocate v. City of Annandale,* 435 N.W.2d 24, 27–29 (Minn.1989).

■ We believe that under the present circumstances, had the respondents directly informed Rutherford's prospective employers of this public information, such communications would have been absolutely privileged. *See Johnson v. Dirkswager,* 315 N.W.2d 215, 222 (Minn.1982). We extend this privilege to the communications imputed to the respondents under the compelled self-disclosure doctrine.

Because we hold that the statements imputed to the respondents were absolutely privileged, we need not consider the question of qualified privilege.

### DECISION

Based on the foregoing, we affirm the trial court's rulings.

Affirmed.