Phyllis A. MILLER, Appellant,

v.

CENTENNIAL STATE BANK, Respondent.

No. C3–90–2634.

Court of Appeals of Minnesota.

June 25, 1991.

Barry A. Sullivan, Coon Rapids, for appellant.

Dennis B. Johnson, Chestnut & Brooks, P.A., Minneapolis, for respondent.

Considered and decided by FOLEY, P.J., and HUSPENI and AMUNDSON, JJ.

## OPINION

HUSPENI, Judge.

Appellant challenges summary judgment for respondent employer and alleges that the trial court erred when it concluded that respondent discharged appellant for a legitimate nondiscriminatory reason. We affirm.

## FACTS

The parties stipulated to a detailed set of facts. Appellant, Phyllis Miller, began working for respondent, Centennial State Bank, in 1964 as a receptionist. Over the years she has held numerous positions, culminating in assistant vice president and head cashier of the bank. On May 16, 1986, the bank president, Lyle Muehlbauer, informed appellant of her termination, effective June 1, 1986. Appellant trained her successor from May 16–31. At the time of her termination, appellant was 54 years old.

Appellant suffers from a sleep disorder known as sleep apnea. Sleep apnea occurs when a person stops breathing while asleep. The oxygen supply to the brain is cut off and the body reacts by awakening and breathing again. The apneas prevent a person from achieving a deep, restful sleep. Appellant began noticing symptoms of overtiredness in late 1983—early 1984 but was not diagnosed until August 1985. She underwent neurological testing and sleep monitoring to discover that she experienced up to 200 apneas per hour each night. As a result, appellant would drop off to sleep while at work; these episodes lasted from a few seconds to as long as seven minutes. The doctor prescribed med-ication for appellant's disorder. Although it improved her condition somewhat, it did not cure her of sleep apnea or her dozing episodes at work.

After her diagnosis, appellant met with Muehlbauer in August 1985 to discuss her condition. While appellant did not believe the sleep disorder affected her work, Muehlbauer believed that her condition was adversely affecting her job performance, particularly her efficiency. In addition, an audit of the bank revealed some discrepancies in the records. The parties agree that while recordkeeping was appellant's responsibility, the bank also had a new computer system which contributed to the errors.

Appellant met with Muehlbauer again in January 1986 to discuss her condition as it related to her job performance. Muehlbauer suggested appellant get a second opinion and take corrective measures for her sleeping disorder by April 1986 or she would lose her job.

The Centennial board of directors met May 14, 1986, to review appellant's employment file. They had reports of several instances since January 1986 when appellant had dozed on the job, which suggested that her sleep disorder continued to pose a serious problem with her job performance. The board voted to terminate appellant's employment contract, effective June 1, 1986.

Appellant brought this suit against respondent alleging wrongful discharge, disability discrimination, and age discrimination. After the hearing on respondent's motion for summary judgment, the parties agreed to dismiss the claims for wrongful discharge and age discrimination, cancel the trial date, and proceed on stipulated facts, depositions and exhibits. Based on that record, the trial court granted respondent's motion for summary judgment.

## ISSUE

Did the trial court err when it granted respondent's motion for summary judgment based on its conclusion that respondent had established a legitimate nondis-

criminatory reason for appellant's termination?

## ANALYSIS

■ On appeal from summary judgment, this court must review the evidence in a light most favorable to the party against whom the motion was granted in order to determine whether any genuine issue of material fact exists and whether the trial court erred in its application of the law. *State by Cooper v. Hennepin County*, 441 N.W.2d 106, 109 (Minn.1989). When the parties submit a set of stipulated facts on appeal, our main inquiry is whether the trial court properly applied the law to the facts of the case. *Magnetic Data, Inc. v. St. Paul Fire & Marine Ins. Co.*, 442 N.W.2d 153, 155 (Minn.1989). Where the material facts are not in dispute, this court need not defer to the trial court's application of the law. *Warmka v. Wells Fed. Sav. & Loan Ass'n*, 458 N.W.2d 695, 696 (Minn.App.1990), *pet. for rev. denied* (Minn. Sept. 20, 1990).

In order to maintain an employment discrimination claim, appellant had the burden of proving that she fell within one of the classes of individuals protected under the Minnesota Human Rights Act, Minn.Stat. §§ 363.01–.14 (1986). *Cooper*, 441 N.W.2d at 110.

The Minnesota Human Rights Act declares:

Except when based on a bona fide occupational qualification, it is an unfair employment practice:

\* \* \* \* \* \*

(2) for an employer, because of race, color, creed, religion, national origin, sex, marital status, status with regard to public assistance, membership or activity in a local commission, disability, or age,

\* \* \* \* \* \*

(b) to discharge an employee.

Minn.Stat. § 363.03, subd. 1(2)(b). The Act defines disability as

any condition or characteristic that renders a person a disabled person. A disabled person is any person who (1) has a physical, or mental impairment which substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.

Minn.Stat. § 363.01, subd. 25.

In defining "disabled person," the *Cooper* court incorporated regulations from the Department of Health and Human Services which define terms that the Minnesota legislature included in the Human Rights Act. "Physical or mental impairment" means:

any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine.

*Cooper*, 441 N.W.2d at 110 (quoting 45 C.F.R. § 84.3(j)(2)(i)(A) (1988)). "Major life activities" means "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* (quoting 45 C.F.R. 84.3(j)(2)(ii) (1988)). This authority recognizes employment as a major life activity under the Act. *Id.*

■ Sleep apnea affects appellant's ability to breathe when she sleeps. As a consequence, she never achieves a sound sleep at night and drops off to sleep uncontrollably during the work day. This condition could reasonably be considered a respiratory disorder within the definition of "physical impairment." Further, this impairment substantially limits appellant's major life activities since it impedes her performance and advancement in her job. *See id.* at 111 (quoting 41 C.F.R. § 60–741 App.A (1987)). Under this analysis, the trial court properly found that appellant is a disabled person under the Minnesota Human Rights Act.

Appellant raises a claim of disparate treatment,[1] alleging that respondent discharged her because of her disability.

1. The United States Supreme Court has recognized two types of employment discrimination

The crux of a disparate treatment claim involving an employer's decision to discharge an employee is that the employer is treating that employee less favorably than others on the basis of an impermissible classification.

*Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 442 (Minn.1983).

In *Danz v. Jones*, 263 N.W.2d 395, 399 (Minn.1978), the Minnesota Supreme Court adopted the three-step analysis for employment discrimination claims which the United States Supreme Court enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). Minnesota courts must use the *McDonnell Douglas* three-step analysis in all employment discrimination cases involving disparate treatment. *Sigurdson v. Isanti County*, 386 N.W.2d 715, 721 (Minn.1986).

The *McDonnell Douglas* analysis requires a prima facie case by appellant, an answer by respondent and a rebuttal by appellant. *Id.* at 802–04, 93 S.Ct. at 1824–25.

## A. Prima Facie Case

An employee may establish a prima facie case of direct discrimination by presenting direct evidence of the employer's discriminatory motive. *Sigurdson*, 386 N.W.2d at 720. In the alternative, the employee may establish a case of indirect discrimination by establishing that:

1. The employee is a member of a protected class;

2. The employee sought and qualified for the job she held;

3. The employee was discharged, despite her qualifications; and

4. After discharge, the employer assigned a non-member of the protected class to do the same work.

*Rutherford v. County of Kandiyohi*, 449 N.W.2d 457, 461 (Minn.App.1989), *pet. for rev. denied* (Minn. Feb. 28, 1990).

Appellant argues first that the trial court erred when it found no evidence of direct discrimination. We disagree. The record presents several statements from bank officers regarding appellant's sleeping problem and its effect on her job performance. *See id.* at 462–63 (poor job performance is a valid consideration in discharge decision). The statements in the record reflect respondent's reaction to the effect that sleep apnea had on appellant's job performance over a period of time. They do not constitute prima facie evidence of direct discrimination.

■ Appellant did, however, meet the four factors to establish a prima facie case of indirect discrimination. We have already determined that appellant is a disabled person under the Minnesota Human Rights Act. Minn.Stat. § 363.01, subd. 25. The parties stipulated that respondent discharged appellant and replaced her with another worker who did not have sleep apnea. The only remaining inquiry was whether appellant was qualified to perform her job. Appellant needed only to show that she "met the minimum objective qualifications for the job." *State by Khalifa v. Hennepin County*, 420 N.W.2d 634, 640 (Minn.App.1988), *pet. for rev. denied* (Minn. May 4, 1988). The stipulated facts list several positions held by appellant during her 22 years as respondent's employee. Each position increased in responsibility and technical skill. Even after notice of termination, respondent asked appellant to train her successor. This evidence is suffi-

cases: disparate treatment and disparate impact. In disparate treatment cases,

> [t]he employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment.

*International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977), *quoted*

in *Hubbard v. United Press Int'l Inc.*, 330 N.W.2d 428, 441 n. 12 (Minn.1983). In contrast, disparate impact cases

> involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Proof of discriminatory motive * * * is not required.

*Id.*

cient indicia that appellant was qualified for her job and properly raised a claim of indirect discrimination.

■ Next, appellant alleges that the trial court erred in applying the *McDonnell Douglas* analysis to this case. Based on *Cooper*, 441 N.W.2d at 110 n. 1, appellant argues that if evidence of direct discrimination exists, the court need not conduct any *McDonnell Douglas* analysis. Again, we cannot agree.

First, contrary to appellant's contention, no evidence of direct discrimination exists in the record. Second, we believe appellant has misconstrued both the language of *Cooper* and the state of employment discrimination law in Minnesota. In *Cooper*, 441 N.W.2d at 110, the court found that direct evidence of discrimination eliminates the need to conduct the four-part indirect discrimination analysis to establish a prima facie case as set out in *McDonnell*, 411 U.S. at 802, 93 S.Ct. at 1824, and adopted in *Sigurdson*, 386 N.W.2d at 720. To interpret *Cooper* as a complete elimination of the *McDonnell Douglas* analysis would be contrary to the body of existing law on employment discrimination. *See, e.g., Sigurdson*, 386 N.W.2d at 721 (Minnesota courts must follow *McDonnell Douglas* three-step analysis in all disparate treatment cases); *LaMott v. Apple Valley Health Care Center*, 465 N.W.2d 585, 589 (Minn.App.1991) (disability discrimination case in which plaintiff established direct discrimination and court conducted *McDonnell Douglas* prima facie case, answer and rebuttal analysis).

In a commendably detailed memorandum, the trial court analyzed the case properly by determining from the evidence that appellant established the factors necessary for a prima facie case of indirect discrimination, and by proceeding with the *McDonnell Douglas* three-step analysis as required in disparate treatment cases.

## B.  Answer

■ Once appellant established a prima facie case that respondent discriminated against her, respondent had the burden of producing a legitimate nondiscriminatory reason for its actions. *Sigurdson*, 386 N.W.2d at 720.[2]

Since 1984 respondent and appellant have discussed the sleep disorder and its effect on appellant's work. Respondent urged appellant to seek medical treatment and encouraged her to take necessary steps toward recovery. The record shows that respondent worked with appellant in her efforts to treat her disorder, and was patient in waiting for appellant to improve her condition and her job performance. The record indicates, however, that unfortunately, her performance worsened throughout the months.

An employee's inadequate job performance is a legitimate consideration and reason for discharge. *Rutherford*, 449 N.W.2d at 462–63. Respondent cites several instances, for which appellant conceded at least partial responsibility, which exhibit appellant's inability to perform her job well: an auditor's report which found "numerous reconciling, misposted and nonposted items" in bank records; a large discrepancy in bank reconciliations; a six-week backlog in reconciling investment portfolios; and dozing while waiting on bank customers.

This unrefuted evidence sets forth ample valid reasons for respondent's decision to discharge appellant. Respondent is a bank, and must rely on appellant for accurate and efficient bookkeeping. A person cannot summon the concentration and full mental power needed to balance books, conduct transactions and compute figures when that person is subject to repeated instances of falling asleep.

In a letter between counsel, respondent stated:

> [Appellant] was terminated due to the fact that her frequent and observable sleeping during working hours and while

**2.** Although the burden of production shifts to respondent, the ultimate burden of persuasion remains on appellant. *Hubbard*, 330 N.W.2d at 441 n. 12 (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)).

performing her duties was inconsistent with the image and character required by [respondent] for its executives. Such behavior by [an] * * * executive performing supervisory functions undermines employee morale and necessitates additional, unplanned supervision of one who was herself a supervisor.

Appellant suggests that this letter is an example of blatant discrimination. We do not read it as such. Instead, we conclude that this letter reflects the effect that appellant's job performance had on respondent and on the entire work environment in the bank. In light of appellant's deteriorating performance since 1984, the trial court properly found that respondent had a legitimate nondiscriminatory reason for discharging appellant.

## C. Rebuttal

Once respondent presented a legitimate nondiscriminatory reason for appellant's termination, the burden shifted back to appellant to prove that respondent's reason was merely a pretext for discrimination. *Sigurdson,* 386 N.W.2d at 720 (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207). Appellant "has the burden of persuading the court by a preponderance of the evidence that the employer intentionally discriminated against her." *Id.* Appellant may "sustain this burden 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.; Rutherford,* 449 N.W.2d at 463.

Appellant offers statements by respondent as proof that respondent fired her solely because of her sleep disorder. Taken as a whole, however, these statements do not prove discrimination. Instead of negating respondent's proffered explanation for appellant's discharge, we believe this evidence supports its credence. The evidence suggests that from 1984–86 respondent afforded appellant time and understanding to diagnose, treat and begin to overcome her problems. The trial court properly concluded that appellant failed to rebut as pretext respondent's nondiscriminatory reason for her discharge.

Finally, appellant argues that the trial court failed to find that appellant had established a prima facie case of discrimination and therefore erred in failing to require that respondent prove an affirmative defense that its actions were based on a bona fide occupational qualification (BFOQ). We disagree with appellant's assertions on this issue in two respects. Initially, the record indicates that the trial court did, in fact, determine that appellant had established a prima facie case of discrimination. Further, in the second step of the *McDonnell Douglas* analysis, respondent effectively carried whatever burden it would have been required to bear under an affirmative defense of BFOQ.

The Minnesota Human Rights Act allows an employer to discriminate if actions are based on a BFOQ. Minn.Stat. § 363.03, subd. 1. To constitute a BFOQ, a business criterion must have a factual basis. *Lewis v. Remmele Eng'g, Inc.,* 314 N.W.2d 1, 3 (Minn.1981). The employer must establish "that all or substantially all persons afflicted with the condition are unable to safely and efficiently perform the responsibilities of the employment position." *Id.* (citing *Weeks v. Southern Bell Tel. & Tel. Co.,* 408 F.2d 228, 235 (5th Cir.1969)). Respondent successfully defended its actions based on a legitimate nondiscriminatory reason; namely that all or substantially all persons afflicted with a condition such as appellant's would be unable to safely and efficiently perform the responsibilities of appellant's job.

The parties pleaded the issues fully under *McDonnell Douglas* and the trial court properly concluded that respondent justifiably discharged appellant without discriminatory intent.

## DECISION

The trial court properly granted summary judgment in favor of respondent on the ground that appellant failed to rebut as pretext the legitimate nondiscriminatory reason which respondent presented for dis-

charging appellant from her employment duties.

Affirmed.