Patricia A. **LINDGREN**, Appellant,

v.

**HARMON GLASS COMPANY,**
**Respondent.**

**No. C1-92-238.**

Court of Appeals of Minnesota.

Aug. 18, 1992.

Review Denied Oct. 20, 1992.

John C. McIntosh, Daniel R. Butler, Daniel R. Butler & Assoc., P.A., St. Paul, for appellant.

David Y. Trevor, Dorsey & Whitney, Minneapolis, for respondent.

Considered and decided by PETERSON, P.J, and FORSBERG and AMUNDSON, JJ.

## OPINION

AMUNDSON, Judge.

Appellant Patricia A. Lindgren brought this action against her former employer, respondent Harmon Glass Company. Her complaint seeks recovery on a number of claims, including disability discrimination, breach of contract, defamation, infliction of emotional distress, and breach of an implied covenant of good faith and fair dealing. She challenges the trial court's grant of summary judgment to Harmon Glass. We affirm.

## FACTS

Lindgren was first employed by Harmon Glass in October 1972. She began working as a secretary in June 1974 and held that position until her termination in 1990. In 1966 Lindgren was diagnosed as having rheumatoid arthritis. She did not experience any substantial problems from her condition until 1977, when she began a treatment regimen.

Between 1978 and 1990, Lindgren underwent nine major surgeries for her arthritis. With the exception of the last emergency procedure in February 1990, all of her operations were planned to create a minimum of disruption in her job. Following each procedure, Lindgren was absent from work for extended periods of time. Between March 1989 and March 1990, the year immediately prior to her termination from employment, she underwent three surgeries and missed 63 full days of work. She was also absent from work at other times due to doctor visits or minor illnesses.

In August 1989 Lindgren's supervisor, Ferd Dobmeyer, questioned her about her medical absences and a planned vacation. Lindgren testified Dobmeyer told her further surgeries might result in a reassessment of her employment. Dobmeyer also said it would not look good to others in the department if she took a vacation so soon after a medical leave. Lindgren explained she and her husband had made a substantial deposit which would be forfeited if they did not leave as scheduled. Lindgren went on vacation as planned.

In November 1989 Dobmeyer met again with Lindgren. He told her if she had any more major surgery, he would have to take a serious look at her continued employment. Dobmeyer did not discuss any other performance problems at either of his meetings with Lindgren.

Following her February 1990 emergency surgery, Dobmeyer met with two other individuals for whom Lindgren worked, Gary Jacobson and Tom McBride. Both Jacobson and McBride expressed concern about Lindgren's lengthy absences. However, the ultimate decision to terminate Lind-

gren's employment was made by Dobmeyer.

Prior to Lindgren's scheduled return to work, Dobmeyer informed her that she could no longer work for Harmon Glass, and that he was placing her on permanent disability status so she could receive long-term disability benefits. In a March 8, 1990 letter he stated:

Pat, in my judgment, you are no longer able to perform the normal duties of your secretarial position, and, therefore, the Company considers you to be disabled. Of course, the disability to which I refer is the direct result of the rheumatoid arthritis.

\* \* \* \* \* \*

Pat, I've worked with you for about 18 years. It was difficult to have to make the decision that your arthritis is now preventing you from being able to perform your job responsibilities. I do care about you, and I want to do what is fair and just for you, at the same time as I take care of the secretarial needs at our office.

Lindgren testified that after this discussion with Dobmeyer she called two coworkers. From them she discovered they already knew about her termination. She had no knowledge, however, of any statements made by Harmon Glass about her termination to anyone either inside or outside the company. McBride testified that when other Harmon Glass employees asked about Lindgren, he merely stated she "was no longer with us."

Lindgren claims it was very difficult to look for a new job. She testified she told prospective employers she was terminated for medical reasons, or Harmon Glass had terminated her after a series of operations. In June 1990 Lindgren was hired as a secretary by the Girl Scout Council of Minneapolis.

Harmon Glass contends it terminated Lindgren due to her prolonged absences and poor job performance. By affidavit Dobmeyer stated Lindgren's attendance record was "by far the worst of any employee I have supervised." Dobmeyer further stated:

In my judgment, Ms. Lindgren's attendance record was unacceptable regardless of the cause of her absences. Had they been caused by something other than her rheumatoid arthritis, my employment decision would have been the same.

McBride and Jacobson both made statements during their depositions which suggested that Lindgren's attendance at work was an important part of her job, and that Lindgren's absences adversely affected the business. At her deposition, Lindgren essentially agreed she was terminated due to her absences. When asked about her understanding of the reasons for her termination, she initially just stated she was terminated because of her arthritis. With further questioning, she agreed she was terminated due to the prolonged absences caused by her numerous surgeries.

Lindgren also testified she did not believe Harmon Glass could terminate her employment unless she committed some gross misconduct. She based that belief on her general understanding of the business community, and on an oral promise made some years earlier by Dobmeyer. She claims Dobmeyer made that promise after an individual for whom Lindgren worked retired. She approached Dobmeyer and expressed concern about her job security. She testified Dobmeyer stated "that I did not have to worry about my position, that there would be a job." Dobmeyer recalled that Lindgren was concerned and insecure about losing her position, and that "if I did anything, or said anything to her, it was along the lines of giving her some reinforcement or encouragement."

Lindgren acknowledged that a handbook distributed in 1989 by Harmon Glass to its employees contained a provision which stated "[t]he company maintains an 'At–Will' relationship with its employees," and the company "has the right to terminate employment at any time and for any reason." She further acknowledged that when she received the handbook, she signed a statement indicating she had read the handbook and understood its contents.

## ISSUES

1.  Did the trial court err in granting summary judgment on the disability discrimination claim?

2.  Does Lindgren have a claim for failure to reasonably accommodate?

3.  Did the trial court err in granting summary judgment on the breach of contract claim?

4.  Did the trial court err in granting summary judgment on the defamation claim?

## ANALYSIS

On appeal from summary judgment, this court must determine whether there are any genuine issues of material fact. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). When defending itself against a motion for summary judgment, a plaintiff is required to present facts supporting its claims and may not merely argue that those facts will be developed later or at trial. *See Schmidt v. Apple Valley Health Care Ctr., Inc.*, 460 N.W.2d 349, 354 (Minn.App.1990), *pet. for rev. denied* (Minn. Oct. 25, 1990).

### I

Lindgren claims Harmon Glass violated the Minnesota Human Rights Act, which prohibits an employer from discharging an employee because of a disability. *See* Minn.Stat. § 363.03, subd. 1(2)(b) (1990). In evaluating such a claim, this court has applied the three-stage analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Rutherford v. County of Kandiyohi*, 449 N.W.2d 457, 461 (Minn. App.1989), *pet. for rev. denied* (Minn. Feb. 28, 1990).

Under the first step, Lindgren must establish a prima facie case either by presenting direct evidence of discrimination or by showing 1) she was a member of a protected class, 2) was qualified for the position held, 3) was discharged, and 4) was replaced by a non-member of the protected class. *See id.* For the purposes of its summary judgment motion, Harmon Glass conceded Lindgren established her prima facie case.

Under the second step, the burden shifts to Harmon Glass to articulate a legitimate nondiscriminatory reason for discharging Lindgren. *Id.* at 462. If successful, the burden shifts back to Lindgren to establish that Harmon Glass' stated reasons are a mere pretext for discrimination. *Id.* at 463.

Harmon Glass claims it terminated Lindgren based on her poor job performance and excessive absenteeism. We conclude a genuine issue of material fact exists whether the first reason—poor job performance—was the real reason for her discharge. Harmon Glass presented evidence that Dobmeyer, McBride, and Jacobson were concerned about Lindgren's attitude, the amount of work she was able to handle, and the effect her inefficiencies had on the office. These concerns, however, were neither articulated to Lindgren prior to her termination nor discussed by Dobmeyer, Jacobson, and McBride when they discussed Lindgren's continued employment. Moreover, Lindgren presented substantial evidence showing that she had a very favorable employment record. Under these circumstances, a fact issue exists whether Lindgren's poor job performance as articulated by Harmon Glass was the real reason for Lindgren's termination.

In contrast, regarding Harmon Glass' second reason—Lindgren's excessive absenteeism—no disputed facts arise. Harmon Glass presented undisputed evidence Lindgren's absenteeism was excessive and her job required regular attendance. Indeed, Lindgren herself recognized Dobmeyer's decision to terminate her employment was based on her extended absences from work following her surgeries. Under these circumstances, there is no dispute that Lindgren's excessive absenteeism was one of the real reasons for her termination.

Attendance problems may be a legitimate basis for an employer's decision to terminate an employee. *See, e.g., Shockency v. Jefferson Lines*, 439 N.W.2d 715, 719 (Minn.1989) (when principal justification for employee's termination was poor attend-

ance record supreme court concluded employer articulated legitimate nondiscriminatory reason). Moreover, the fact that Lindgren's absences were caused by her disability does not automatically render Harmon Glass' articulated reason for her termination to be discriminatory. Problems caused by a disability may be legitimate, nondiscriminatory bases for termination. *See, e.g., Miller v. Centennial State Bank,* 472 N.W.2d 349, 353–54 (Minn.App.1991) (performance problems caused by employee's sleep apnea constituted legitimate reason for employee's discharge).

Consequently, the fact Lindgren's disability caused her absences does not render Harmon Glass' reason for her termination discriminatory. Lindgren's absenteeism plainly affected her job performance because her job required regular attendance. Accordingly, Harmon Glass has shown its reason for terminating her was legitimate and nondiscriminatory.

▆ Under the third step of the *McDonnell Douglas* analysis, the burden shifts to Lindgren to show Harmon Glass' reason was a mere pretext for discrimination. Lindgren may show pretext by establishing it is more likely Harmon Glass' motives were improper or biased, or that Harmon Glass' proffered explanation is unworthy of credence. *Shockency*, 439 N.W.2d at 719. Evidence of the treatment of the employee and the general policy and practice of the employer may also be relevant. *Id.*

In this case, Lindgren failed to offer any facts to suggest Harmon Glass had an undisclosed motive for its decision to terminate her employment. She does not claim she was subjected to insults or other unfair treatment during her employment at Harmon Glass. Nor does she claim that Dobmeyer or others at Harmon Glass exhibited bias or prejudice in their dealings with her. Accordingly, she has not shown Harmon Glass' stated reason (absenteeism) was merely a pretext for discrimination.

## II

▆ Lindgren claims Harmon Glass failed to reasonably accommodate her disability in violation of Minn.Stat. § 363.03,

subd. 1(6) (1990). The trial court did not specifically address this issue when it granted summary judgment to Harmon Glass. Nevertheless, we believe the merits of this issue should be addressed on appeal. Lindgren's complaint alleges she "was discharged from her employment with [Harmon Glass] because of her disability and without having reasonable accommodations for continuation of her employment." In addition, the issue of reasonable accommodation was discussed by the parties during discovery. *Cf.* Minn.R.Civ.P. 15.02 (issues not raised in pleadings may be tried by consent of parties).

Under certain circumstances, an employer may have a statutory duty to reasonably accommodate an employee's disability. It is an unfair employment practice for an employer with more than 50 permanent employees

> not to make reasonable accommodation to the known disability of a qualified disabled person * * * unless the employer * * * can demonstrate that the accommodation would impose an undue hardship on the business[.] * * * "Reasonable accommodation" may include but is not limited to, nor does it necessarily require: (a) making facilities readily accessible to and usable by disabled person; and (b) job restructuring, modified work schedules, acquisition or modification of equipment or devices, and the provision of aides on a temporary or periodic basis.

Minn.Stat. § 363.03, subd. 1(6). A "qualified disabled person" is, in turn, defined as one who, "with reasonable accommodation, can perform the essential functions required of all applicants for the job in question." Minn.Stat. § 363.01, subd. 35(1) (1990).

Harmon Glass argues it did not violate section 363.03 for two reasons. First, it insists Lindgren was unable to perform one very essential function required of her job: she was unable to attend regularly. While it is undisputed Lindgren could perform her job when she was present, she could not do so when she was not there. Second, Harmon Glass contends no reasonable accommodation was possible under the facts

of this case. The provision of a substitute employee to actually perform the functions of Lindgren's job every time she is absent is beyond any reasonable accommodation. *Cf. LaMott v. Apple Valley Health Care Ctr., Inc.*, 465 N.W.2d 585, 591 (Minn.App. 1991) (rejecting employer's claim accommodation was unreasonable because, in part, employee's co-worker would not do employee's work but the two would work together). We agree with Harmon Glass and conclude Lindgren cannot be accommodated for her excessive absenteeism.

Lindgren argues Harmon Glass' accommodation of her disability was not reasonable because Dobmeyer admitted he made his decision to terminate her employment without any information regarding her medical condition or prognosis. Even if Lindgren's prognosis was such that future surgeries and/or extended absences were unlikely, Harmon Glass' refusal to continue to hire temporary help during any future absence cannot be said to be unreasonable. Harmon Glass has attempted to accommodate Lindgren's disability since 1978. Under these circumstances, Harmon Glass' accommodation of Lindgren's disability was entirely reasonable.

### III

■ Lindgren insists material issues of fact exist regarding her breach of contract claim. Employment relationships in Minnesota are generally presumed to be at-will. *See Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn.1983). As evidenced by the statements in the handbook distributed by Harmon Glass, it is undisputed that, at least initially, Lindgren's employment was at-will.

■ Lindgren nevertheless argues she did not believe Harmon Glass could terminate her without good cause, or unless she committed gross misconduct. However, any subjective belief Lindgren might have that her at-will relationship with Harmon Glass was modified is irrelevant. *See Corum v. Farm Credit Servs.*, 628 F.Supp. 707, 714–15 (D.Minn.1986) (subjective expectation of permanent employment cannot create a contract in accordance with his

employee's understanding); *see also Pine River*, 333 N.W.2d at 626 (contracts are determined by the parties' outward manifestations, not by their subjective intentions").

To overcome the presumption of at-will employment, Lindgren must present evidence Harmon Glass made oral or written statements with specific and definite provisions, and not general statements of policy. *See Holman v. CPT Corp.*, 457 N.W.2d 740, 743 (Minn.App.1990), *pet. for rev. denied* (Minn. Sept. 20, 1990). General statements about job security, such as the ones made by Dobmeyer in this case are insufficient to overcome a grant of summary judgment to an employer. *See Aberman v. Malden Mills Indus.*, 414 N.W.2d 769, 771–72 (Minn.App.1987).

Nor do any of the statements made by Harmon Glass in its handbook rise to the level of an offer sufficient to modify the at-will nature of the employment relationship. The statements cited by Lindgren merely express general concern for the employees' well-being; they contain nothing about job security or progressive discipline. *Cf. Pine River*, 333 N.W.2d at 631 (handbook created disciplinary procedure which was to precede any termination); *Lewis v. Equitable Life Assurance Soc'y*, 389 N.W.2d 876, 883 (Minn.1986) (handbook defined type of misconduct necessary to support termination, and set up three-step disciplinary procedure prior to termination).

■ Lindgren also alleges Harmon Glass breached a covenant of good faith and fair dealing. Minnesota, however, does not recognize such an *implied* covenant as a viable cause of action. *See Hunt v. IBM Mid America Employees Fed. Credit Union*, 384 N.W.2d 853, 858 (Minn. 1986). To the extent Lindgren might allege an *express* covenant existed, she failed to prove that Harmon Glass' statements amounted to a specific and definite offer.

### IV

Lindgren argues material issues of fact exist regarding her defamation claim. The elements of a defamation claim are a false

statement, communicated to a third-party, and damages. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980). Truth offers a complete defense, and true statements, however disparaging, are not actionable. *Id.*

Lindgren has failed to present any facts to support a claim Harmon Glass directly defamed her. Lindgren admitted she had no knowledge of any statements made by Harmon Glass to individuals either inside or outside the company. While she speculates that such statements may have been made because two of her former co-workers knew about her termination before she did, such speculation is insufficient to support a claim of defamation.

Moreover, the termination letter provides no evidence of direct defamation. In the letter, Dobmeyer expresses his opinion that Lindgren's medical condition renders her unable to perform her job. This opinion is not necessarily false; an employee whose job requires regular attendance and who is absent from the job for prolonged periods of time cannot perform her job. Further, the letter was never published because Lindgren did not reveal its contents to prospective employers.

Lindgren's claim of compelled self-defamation is also unpersuasive. Such defamation may occur when an employer makes a defamatory statement to an employee about the reason for discharge, which the employee is then compelled to repeat to prospective employers. *See Lewis*, 389 N.W.2d at 888. Here Dobmeyer's stated reasons for terminating her employment were not false. Lindgren accepted them as true, and interpreted them to mean she was being terminated because of her prolonged absences. She repeated these true statements when prospective employers inquired why she left Harmon Glass.

Finally, Lindgren's claim for negligent infliction of emotional distress is dependent on showing a direct invasion of rights, such as defamation or other willful, wanton or malicious conduct. *Bohdan v. Alltool Mfg., Co.*, 411 N.W.2d 902, 907 (Minn.App.1987), *pet. for rev. denied*

(Minn. Nov. 13, 1987). Consequently, Lindgren's claim for negligent infliction of emotional distress cannot survive dismissal of the defamation claim.

## DECISION

The grant of summary judgment to Harmon Glass is affirmed.

Affirmed.