1998 ND 14

**David ZIMMERMAN, Plaintiff and Appellant,**

v.

**MINOT PUBLIC SCHOOL DISTRICT NO. 1, Defendant and Appellee.**

**Civil No. 970120.**

Supreme Court of North Dakota.

Jan. 21, 1998.

Michael Geiermann (argued), of Rolfson Schulz Lervick & Geiermann Law Offices, P.C., Bismarck, for plaintiff and appellant.

Jason R. Vendsel (argued), of McGee, Hankla, Backes & Dobrovolny, Minot, for defendant and appellee.

MARING, Justice.

[¶ 1]David Zimmerman appealed from a judgment dismissing his action against Minot Public School District No. 1 (District) under the North Dakota Human Rights Act, N.D.C.C. Chapter 14–02.4, claiming physical-disability discrimination in failing to hire him for a teaching position. We conclude the trial court's finding the District established, by a preponderance of the evidence, its hiring decision was motivated by legitimate, nondiscriminatory reasons is not clearly erroneous, and we affirm.

I

[¶ 2]Zimmerman has a severe hearing impairment and uses hearing aids and lip reading to assist him in communicating. He was born, raised, and attended schools in Minot. In 1989 Zimmerman received a B.S. degree from the University of North Dakota with a major in middle school education. He student taught for one semester in the Minot school system. One of the principals he worked with was Leslie Anderson.

[¶ 3]After receiving his teaching certificate for middle school, Zimmerman began teaching physical education at the North Dakota School for the Deaf in Devils Lake, where he continues to work. He had also applied for a teaching position with the District and has continued to apply every year, even when no teaching positions were available.

[¶ 4]In the summer of 1994, the District advertised a six-tenths physical education po-sition at Jim Hill Middle School (Jim Hill). The position included coaching responsibilities in football, basketball, wrestling and track. Jim Hill's head principal was Anderson, who was responsible for interviewing candidates and submitting a recommendation to the District's assistant superintendent. Anderson reviewed the physical education applications that had been filed with the District. Anderson screened out many applications and chose nine applicants to interview. Zimmerman was one of the nine Anderson chose to interview.

[¶ 5]Anderson twice unsuccessfully attempted to contact Zimmerman to make an appointment for an interview and finally contacted Zimmerman's brother to assist in making contact. During the interview, Zimmerman expressed an interest in coaching only hockey and tennis, sports not available at Jim Hill. Nevertheless, Anderson chose Zimmerman as one of three finalists for the teaching position.

[¶ 6]The District ultimately hired a candidate who had a physical education major and a grade point average of about 3.70. Zimmerman was the only candidate with a middle school degree, but he only had a minor equivalency in physical education and a grade point average of 2.50. The hired candidate had expressed an interest in coaching all four sports listed as part of the position. Although he did not have prior professional teaching experience, the hired candidate had recently finished his student teaching at Jim Hill and had received excellent recommendations from his supervising teachers.

[¶ 7]After Anderson made the hiring decision, he called Zimmerman and left a message to return the call.[1] When Zimmerman returned the call, Anderson told him he hired someone else for the teaching position but did not elaborate on the reasons the other person was chosen instead of Zimmerman. Later in the day, Zimmerman called Anderson again in an effort to ascertain why he was not chosen for the position. During this conversation, Anderson stressed Zimmerman was a good and qualified candidate,

---

1. Zimmerman uses the TTY relay system which allows him to speak, through a third person, to    another.

but "experience in our building" was the major factor which swayed them in deciding to choose another person for the job. Anderson did not tell Zimmerman he had any deficiencies in academic performance or grade point average, or that he had an inappropriate major or inadequate coaching experience or ability.

[¶ 8]Zimmerman sued the District, alleging it had violated the North Dakota Human Rights Act by failing to hire him. After trial, the trial court found Zimmerman has a hearing impairment and is "physically handicapped," entitling him to the protections set forth in N.D.C.C. Chapter 14–02.4. However, the court found Zimmerman had not made "a prima facie showing that the reason he was not hired ... was based upon a discriminatory decision by the District." The court noted, "the parties stipulated that rather than the plaintiff first presenting his case and then defendant presenting its separate case, the defendant virtually presented its case by cross examination of plaintiff's witnesses," and the District "persuaded the Court by a preponderance of the evidence presented that its decision not to offer the job to Zimmerman was motivated by one or more legitimate nondiscriminatory reasons ...." The trial court dismissed the action and Zimmerman appealed.

## II

[¶ 9]The North Dakota Human Rights Act prohibits discrimination in employment relations for a number of reasons, including physical disability. N.D.C.C. § 14–02.4–01; *Thompson v. City of Watford City*, 1997 ND 172, ¶ 13, 568 N.W.2d 736. Specifically under N.D.C.C. § 14–02.4–03, it is a forbidden "discriminatory practice for an employer to fail or refuse to hire a person ... because of ... physical ... disability...."

[¶ 10]The framework for analyzing allegations of discriminatory treatment under state law was set forth in *Schweigert v. Provident Life Ins. Co.*, 503 N.W.2d 225, 229 (N.D.1993):

> Accordingly, under our modification of the *McDonnell Douglas/Burdine* framework, in a case under Chapter 14–02.4, NDCC, the plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination.

Establishment of the prima facie case creates a presumption that the employer unlawfully discriminated against the plaintiff. If the plaintiff meets his or her burden of persuasion, and succeeds in establishing the presumption, then, under Rule 301, NDREvid, the burden of persuasion shifts to the employer to rebut the presumption of discrimination by proving by a preponderance of the evidence that its action was motivated by one or more legitimate, nondiscriminatory reasons. If the employer fails to persuade the trier of fact that the challenged action was motivated by legitimate, nondiscriminatory reasons, the plaintiff prevails. If, however, the employer persuades the fact finder that its reasons were nondiscriminatory, the employer prevails.

The formula allocates the order of presentation of proof and ascribes the burden of proof each party bears. *See Schweigert.*

[¶ 11]A trial court's decision whether an employer discriminated against an employee is a finding of fact subject to review on appeal under the clearly erroneous standard of N.D.R.Civ.P. 52(a). *Thompson* at ¶ 12. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if that court is left with a definite and firm conviction that a mistake has been made. *Mertz v. Arendt*, 1997 ND 113, ¶ 9, 564 N.W.2d 294.

### A

[¶ 12]Zimmerman asserts the trial court erred in finding he failed to establish a prima facie case of discrimination. Zimmerman claims the court's error is compounded, because it did not identify the required elements of a prima facie case under these circumstances and did not identify which elements were missing.

[¶ 13]The parties agree a prima facie showing of discrimination in a physically handicapped, failure-to-hire situation requires at least three elements: (1) the applicant is handicapped for purposes of N.D.C.C. Chapter 14–02.4; (2) the applicant was qualified for the position; and (3) the applicant did not receive the position. The dispute here is whether there exists a fourth element.

[¶ 14]The trial court implicitly agreed with the District there are more than three elements when it explained, "the mere fact that one is physically handicapped, qualified for a position, but is not hired, does not, in and of itself, constitute a showing that the reason was based upon discrimination because of the person's handicap." The court required some evidence of unfair treatment creating at least an inference of discrimination for Zimmerman to establish a prima facie case of discrimination. The court concluded Zimmerman failed to present such evidence.

### B

■ [¶ 15]The trial court, however, additionally found the District had established, by a preponderance of the evidence, its decision was motivated by legitimate, nondiscriminatory reasons. It is, therefore, unnecessary for us to examine the elements of a prima facie case and our inquiry is limited to whether this finding of the trial court is clearly erroneous. *See Thompson* at ¶ 12. We conclude the trial court's finding is not clearly erroneous.

[¶ 16]The District presented evidence it had 30 physical education teachers at the time of trial and 24 of them had majors in physical education. The only person who had an academic minor had been with the District more than 30 years. Around 40 percent of teachers hired had no previous professional teaching experience. The District employs several physically handicapped persons, including one with a hearing impairment.

[¶ 17]The person hired had a grade point average of about 3.70 as opposed to Zimmerman's 2.50. The person hired had a major in physical education as opposed to Zimmerman's minor equivalent. Zimmerman told Anderson during the interview he was only interested in coaching sports that were not offered at Jim Hill, but the individual hired was interested in coaching the sports offered at the school. Moreover, Anderson sought out Zimmerman to interview him knowing he had a hearing impairment, conducted a second "cut" and still considered Zimmerman a viable candidate, and included him as one of three finalists. This evidence permits a strong inference the District had no discriminatory motives in its dealings with Zimmerman.

[¶ 18]Zimmerman relies heavily on his prior teaching experience and the lack of any by the individual hired. However, the person hired had student taught at Jim Hill the previous school year and had received excellent recommendations from his supervising teachers. This evidence indicates the person hired was a "proven entity," which balances against Zimmerman's actual teaching experience.

[¶ 19]Zimmerman's primary argument focuses on the second telephone call between he and Anderson when Anderson failed to mention any academic or coaching reasons for hiring the other individual and spoke only in terms of "experience in our building." According to Zimmerman, the failure to mention other reasons shows the District was discriminating against him and merely concocted the other reasons after the fact. Anderson testified he had never used the TTY system before that day, had a difficult time with the process, and did not understand Zimmerman's questions as presented by the TTY operator. Anderson further testified he was unwilling to comment on deficiencies with Zimmerman's academic record and experience because he believed this was "confidential" information that should not be discussed through a third person. The trial court found Anderson's testimony to be truthful, and we do not second-guess the trial court on its credibility determinations. *See State v. Hafner*, 499 N.W.2d 596, 597 (N.D. 1993).

[¶ 20]We conclude the trial court's finding the District established, by a preponderance of the evidence, its hiring decision was motivated by legitimate, nondiscriminatory reasons is not clearly erroneous.

### C

■ [¶ 21]We also reject Zimmerman's assertion the trial court committed reversible error in failing to consider the pretext issue. *See Schweigert*, 503 N.W.2d at 228. Although the court did not specifically mention pretext, the tenor of the court's entire opinion is the District's hiring decision was based on truthful, legitimate and nondiscriminatory

reasons. This is tantamount to a finding the District's reasons were not pretextual, and that implied finding is not clearly erroneous.

### III

[¶ 22]The judgment is affirmed.

[¶ 23]VANDE WALLE, C.J., NEUMANN, and SANDSTROM, JJ., and RONALD E. GOODMAN, District Judge, concur.

[¶ 24]RONALD E. GOODMAN, District Judge, sitting in place of MESCHKE, J., disqualified.

