# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-2989

_____

| | | |
|---|---|---|
| Judith Moritz, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Frontier Airlines, Inc., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: March 9, 1998

Filed: July 7, 1998

_____

Before WOLLMAN and LOKEN, Circuit Judges, and BATAILLON,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

Judith Moritz appeals from the district court's[2] grant of summary judgment in favor of Frontier Airlines, Inc. (Frontier) on her claims of discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq., and the North

_____

[1]The HONORABLE JOSEPH H. BATAILLON, United States District Judge for the District of Nebraska, sitting by designation.

[2]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

Dakota Human Rights Act (NDHRA), N.D. Cent. Code §§ 14-02.4-01 et seq. We affirm.

## I.

Moritz was diagnosed with multiple sclerosis in 1990. In late 1993 and early 1994, this diagnosis was questioned and Moritz became unsure of her condition. She later learned that Frontier planned to introduce flight service to Bismarck, North Dakota. Convinced that she was in good health, she applied for and was given a position as a Frontier station agent on June 6, 1994. At the time, Frontier represented that the job responsibilities for that position included ticket counter and gate duties only. Later, it added baggage and aircraft servicing (ramp duties) to the responsibilities of the position. In late 1994 or early 1995, Frontier published a "Frontier Airlines Job Posting" to advertise openings for future station agent positions in Bismarck. This document stated that the position "will encompass involvement in our ENTIRE flight activity operation." Appellee's Appendix at 1 (emphasis in original). The job posting also detailed the station agent duties, which included ticketing, gate check-in, passenger assistance, baggage handling, and mail and freight handling. Ticket counter work was primarily limited to checking in passengers, loading their bags onto a conveyor behind the counter, completing paperwork, and, if necessary, running a late-arriving passenger's bag to the aircraft. Gate work consisted primarily of taking passengers' tickets as they boarded the flights and assisting handicapped passengers on and off the aircraft. Ramp work involved the most strenuous duties, including the loading and unloading of baggage and freight from the aircraft.

Moritz was hired by Frontier during the start-up of its Bismarck flight operations. All station agents were permitted to bid on job shifts at Bismarck under a seniority system devised by Frontier management. The seniority system was based solely upon employee age. Moritz, who was third in seniority, bid a shift that included ramp, ticket counter, and departure gate duties. In the fall of 1994, Moritz's multiple sclerosis

worsened and she began to experience weakness in her right leg. With the approval of Lyle Beyerle, Frontier's Bismarck station manager, she traded shifts with a co-worker, enabling her to work additional time at the ticket counter rather than the ramp.

In November of 1994, a new flight schedule required that all of the Bismarck station agents re-bid their job shifts. Moritz bid and received a shift that allowed her to work exclusively inside at the ticket counter and gate. As a result of the shift change, Ken Wolbaum, a co-worker of Moritz's, was forced to take a shift with more ramp duties. After the shift change was initiated, Wolbaum continually expressed his dissatisfaction with the seniority system and frequently targeted Moritz with degrading and harassing remarks.

In January of 1995, Moritz's physician confirmed the diagnosis of multiple sclerosis. Moritz informed Beyerle of the diagnosis and her need for accommodation. Specifically, she requested that she be relieved from gate duties. Her requests were supported by a letter from her physician. Although Beyerle informed Moritz that he was unable to guarantee her a long-term slot in an inside shift, he assured her that he would make every effort to keep her at the ticket counter or the gate, even if it meant infringing the seniority system. Moritz continued working her gate duty on Sundays and was able to perform her job with the help of Sara Thiel, a part-time co-worker, who volunteered to help Moritz by assisting passengers who needed help boarding and deplaning aircraft.

Meanwhile, Moritz had discussed Wolbaum's harassment with Beyerle and requested that something be done about it. Beyerle held a meeting with a number of employees, including Wolbaum, to discuss the ADA and Moritz's health. Moritz alleges that the harassment continued and that her repeated complaints to Beyerle were ineffective. Beyerle maintains that he was not apprised of the continuing harassment.

On March 20, 1995, Moritz wrote a letter to Terry White, Frontier's regional director, explaining the dispute over the seniority system and complaining of Wolbaum's conduct. After informing Moritz that he would handle the situation, an employee in Frontier's Human Resources Department contacted Wolbaum and told him his harassing behavior would no longer be tolerated. Although it is disputed whether Wolbaum continued his improper behavior, we assume for our purposes that it continued.

In April of 1995, the shifts were again rebid and Moritz was able to retain her shift. This time, however, the flight schedule change resulted in Thiel's reassignment to another shift. Moritz alleges that she informed Beyerle that she could not work gate duty without assistance and requested that an assistant be put back on gate duty or, in the alternative, that she be permitted to work the ticket counter exclusively. Moritz resigned her position on April 29, 1995, apparently as the result of Wolbaum's harassment and the difficulties she faced performing gate duties without Thiel's assistance.

Moritz filed charges against Frontier with the Equal Employment Opportunity Commission and received a "right to sue" letter. She then filed this action, alleging that Frontier's actions (and inaction with respect to Wolbaum's harassment) were in violation of the ADA and the NDHRA. She also alleged that Frontier was liable for intentional infliction of emotional distress. The district court granted Frontier's motion for summary judgment on Moritz's discrimination claims and declined to retain jurisdiction over her emotional distress claims under 28 U.S.C. § 1367(c)(3).

## II.

We review the grant of summary judgment *de novo*, applying the same standard as the district court, affirming if the facts, viewed in a light most favorable to Moritz, reveal no genuine issues of material fact and demonstrate that Frontier is entitled to

judgment as a matter of law.  See The Prudential Ins. Co. of America v. Doe, 140 F.3d 785, 790 (8th Cir. 1998).  In order to prevail on her claim, Moritz must establish that she is disabled as defined in 42 U.S.C. § 12102(2); that she is qualified to perform the essential functions of the job, with or without reasonable accommodation; and that she has suffered adverse employment action as a result of her disability.  See Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995).

There appears to be no dispute that Moritz, as a result of her confirmed diagnosis of multiple sclerosis, is considered a person with a disability within the meaning of the ADA.[3]  The ADA affords protection to any "qualified individual with a disability."  42 U.S.C. § 12112(a).  To be considered a qualified individual, Moritz must (1) possess the requisite skill, education, experience, and training for the position; and (2) be able to perform the essential job functions, with or without reasonable accommodation.  See 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m).  The parties agree that Moritz meets the first element of qualification.

The decisive issue, then, is whether Moritz was able to perform the essential functions of her job, with or without reasonable accommodation.   See Cassidy v. Detroit Edison Co., 138 F.3d 629, 633-34 (6th Cir. 1998) (employee "bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable.").  An essential function "means the fundamental job duties of the employment position the individual with a disability holds or desires.  The term

---

[3]Under the ADA, a disability is:

    (A) a physical or mental impairment that substantially limits one or more
        of the major life activities of such individual;
    (B) a record of such an impairment; or
    (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

'essential functions' does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). Frontier asserts that Moritz cannot perform the essential functions of a station agent either with or without reasonable accommodation. Moritz responds that with a reasonable accommodation she could perform the job. The district court found that the essential functions of Moritz's position included only her duties as a ticket agent and gate agent. Because it appears undisputed that Moritz was able to satisfactorily perform her ticket counter duties, we direct our inquiry to her gate duties. The tasks that comprised this function included taking tickets, counting passengers, and assisting elderly and disabled passengers during boarding and deplaning. Moritz contends that passenger assistance is not an essential function of the station agent position.

An essential function may be established by evidence that includes: (1) "[t]he employer's judgment as to which functions are essential"; (2) [w]ritten job descriptions prepared before advertising or interviewing applicants for the job"; (3) "the amount of time spent on the job performing the function"; (4) "the consequences of not requiring the incumbent to perform the function"; and (5) "the current work experience of incumbents in similar jobs." 29 C.F.R. § 1630.2(n)(3). Moritz relies upon the last three factors in support of her argument. First, she asserts that she needed help in assisting passengers for only a few minutes per week. Second, she contends that because Frontier knew that she was being assisted by Thiel, the airline would not suffer a detriment by supplying her with a helper. Finally, Moritz argues that because Beyerle served as an additional helping hand during weekdays, she should be entitled to the same assistance.

A number of factors support a different conclusion. First, it is apparent that in Frontier's judgment, passenger assistance is an essential function of the station agent position. Station agents were expected to perform a wide variety of duties as the situation at Bismarck changed. Indeed, Moritz was informed when she was hired that the position would include gate duties. Moritz also fails to consider Frontier's situation

-6-

as a startup airline with a limited budget for staffing its Bismarck operations, for the consequences of not requiring a station agent to assist passengers are evident. Moreover, the regulations direct that "[a] job function may be considered essential for any of several reasons, including but not limited to the following: . . . (ii) The function may be essential because a limited number of employees available among whom the performance of that job function can be distributed." 29 C.F.R. § 1630.2(n)(2). We believe that Frontier's efforts to support a seven-day flight schedule with its limited staff fall squarely within the situation contemplated by the regulation. Accordingly, we conclude that the district court correctly determined that passenger assistance was an essential function of Moritz's job.

We turn to the question whether Moritz could assist Frontier's passengers, with or without a reasonable accommodation. Her own testimony establishes that she was unable to satisfactorily facilitate passenger boarding and deplaning without the assistance of a co-worker. This limitation was also observed by her physician. Moreover, Moritz admitted that she had difficulty performing other gate duties that involved walking up and down the jetways that led from the gate to the aircraft. Thus, the district court correctly determined that she could not perform the essential functions of her position without accommodation.

Finally, we conclude that the district court correctly found that Moritz could not perform the essential functions of her position with a reasonable accommodation. The possibility of a reasonable accommodation is part of Moritz's initial burden when presenting her *prima facie* case of disability discrimination. See Cody v. Cigna Healthcare of St. Louis, Inc., 139 F.3d 595, 598 (8th Cir. 1998). Her only suggestions for accommodation include the request that Frontier either allow her to work exclusively at the ticket counter or else to provide her with an assistant while performing her gate duties. Neither of these accommodations can be considered reasonable and, in fact, both fail to comport with established ADA discrimination law.

It is well settled that an employer is under no obligation to reallocate the essential functions of a position that a qualified individual must perform. See Benson, 62 F.3d at 1112-13; 29 C.F.R. pt. 1630, app. § 1630.2(o); Holbrook v. City of Alpharetta, Georgia, 112 F.3d 1522, 1528 (11th Cir. 1997) (small police department with three detectives not required to eliminate essential function of crime scene investigation for disabled detective). As a result, Frontier is not required to revise its bidding system or to eliminate Moritz's gate duties. See Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th Cir. 1995) ("employer is not required to make accommodations that would violate the rights of other employees"). Furthermore, Frontier is not obligated to hire additional employees or reassign existing workers to assist her in her gate duties. See Cochrum v. Old Ben Coal Co., 102 F.3d 908, 912 (7th Cir. 1996) (assignment of helper not reasonable accommodation); Gilbert v. Frank, 949 F.2d 637, 644 (2d Cir. 1991) (reassigning tasks to co-workers was not reasonable accommodation under Rehabilitation Act of 1973); Cassidy, 138 F.3d at 634; Harden v. Delta Air Lines, Inc., 900 F. Supp. 493, 498 (S.D. Ga. 1995) (airline customer service agent required to perform all job duties when needed to assist in other areas).[4] Accordingly, Moritz cannot show that she is a qualified individual under the ADA and therefore has not established a *prima facie* case of disability discrimination. See Price v. S-B Power Tool, 75 F.3d 362, 365 (8th Cir.), cert. denied, 117 S. Ct. 274 (1996). Likewise, because the North Dakota Supreme Court has adopted a similar analysis under the NDHRA, Moritz's claim under state law must also fail. See Zimmerman v. Minot Pub. Sch. Dist. No.1, 574 N.W.2d 797, 799 (N.D. 1998).

---

[4]Moritz's argument that she only required a helper for a few minutes each week is unpersuasive. It is unrealistic to suggest that Frontier either hire or reassign an employee to cover two twenty-minute shifts during Frontier's Sunday flight operations.

## III.

Moritz contends that the district court erroneously disregarded her ADA hostile environment harassment claim. Although we are uncertain whether such a cause of action exists, our conclusion that Moritz has failed to establish a *prima facie* case of discrimination suffices to render her harassment argument meritless. "In all constructive discharge and harassment cases under the ADA, . . . the plaintiff must first make out a prima facie case of discrimination or face dismissal of her claim." Cody, 139 F.3d at 598. Moritz may not seek the protections of the ADA for her harassment claim any more than she may for her discrimination claim. Finally, it is important to note that our holding does not completely prevent Moritz from seeking redress in state court for Wolbaum's behavior or Frontier's alleged failure to curtail it.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.