# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2655

_____

Michael D. Maziarka,                       *

                             *

           Appellant,         *

                             *  Appeal from the United States

     v.                     *  District Court for the

                             *  District of Minnesota.

Mills Fleet Farm, Inc.,            *

                             *

           Appellee.         *

_____

Submitted:  October 16, 2000

Filed:  April 3, 2001

_____

Before WOLLMAN, Chief Judge, BEAM, and MORRIS SHEPPARD ARNOLD,
     Circuit Judges.

_____

WOLLMAN, Chief Judge.

Michael D. Maziarka appeals from the district court's[1] grant of summary judgment on his employment discrimination claims under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213, and the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363.01-363.15, in favor of his former employer, Mills Fleet Farm, Inc. (Fleet Farm).  We affirm, but for a reason other than that relied

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

upon by the district court.  See Phillips v. Marist Soc'y, 80 F.3d 274, 275 (8th Cir. 1996).

**I.**

We recite the facts in the light most favorable to Maziarka.  Maziarka suffers from a condition known as irritable bowel syndrome that causes diarrhea, severe cramping, and vomiting.  Less common symptoms include nausea, joint pain, and fever, all of which afflict Maziarka.  According to Maziarka's treating physician, Dr. Mark Liebow of the Mayo Clinic, one-sixth of the population suffers from irritable bowel syndrome, but Maziarka's case is unusually severe, one of the cases that "represent less than 1/10 of 1% of all those suffering with irritable bowel syndrome."  Treatment may alleviate the symptoms, but the condition is incurable and flares up unpredictably. When Maziarka is symptomatic, he is essentially bedridden for a period of time, often as long as two days.

In November of 1995, Fleet Farm hired Maziarka as a full-time clerk in the hardware department of its store in Winona, Minnesota.  In December of 1995, Maziarka was absent from work due to illness on four occasions and twice left early for the same reason.  A performance review for this month noted this absenteeism as unsatisfactory.  Maziarka received a good performance review for January of 1996, however, having arrived late to work on only two occasions and having no absences related to illness.  In early 1996, Maziarka was transferred to the receiving department.

According to the written job description for receiving clerk, Maziarka's primary job responsibility was "to receive and properly record merchandise off the carrier's manifest."  Receiving clerks inspect freight bills and merchandise shipments, have the freight driver acknowledge any discrepancies in the order, check in and scan merchandise, and respond to calls for help in all areas of the store.  Performance is judged on accuracy and speed and on the ability to follow up on damage and other

discrepancies. Maziarka stated that the workload was sporadic; some days were busy, particularly during July when holiday merchandise arrives, but some days Maziarka "pushed a broom for eight hours." The receiving department's work depended on the arrival of various delivery trucks, and thus the level of work varied with no recognizable pattern. The department consisted of three to four full-time employees plus a couple of part-time employees, who generally worked alone or with one other person during their shifts. The assistant manager stated that he had called in other receiving clerks to fill in for absent employees only once or twice. Clerks from other departments were not trained to fill in for absent receiving department employees.

From February 9, 1996, to Maziarka's termination date, December 9, 1996, Maziarka was absent from work because of illness an average of two days per month and left early or arrived late approximately six times. Maziarka's performance reviews during this time marked his "attendance/dependability" as unsatisfactory. Although Maziarka brought in numerous notes from Dr. Liebow explaining his condition and excusing his absences, he received repeated oral warnings about his absenteeism and received numerous written disciplinary warnings. In September of 1996, Maziarka received a final written warning that required him to provide a written medical excuse for every absence. Maziarka met this requirement and called Fleet Farm promptly when he would be absent from work. Also in September, Maziarka filed for medical leave on an intermittent basis, which was denied because he had not worked for Fleet Farm for a year.[2] Maziarka was told during one of his meetings with the store manager that "[i]f you knew you had this condition, you should have never applied here."

On December 5 and 6 of 1996, Maziarka was unable to come to work because of a flare up of irritable bowel syndrome. On December 9, 1996, Fleet Farm fired him for excessive absenteeism.

_____

[2]Maziarka also filed for medical leave in December of 1996, but was terminated before he received a response.

Maziarka brought claims under the ADA and the MHRA against Fleet Farm for terminating him because of his disability and for failing to accommodate his disability. The district court granted summary judgment to Fleet Farm, concluding that Maziarka had failed to show that he was substantially limited in any major life activities.

## II.

We review the district court's grant of summary judgment de novo. Henerey v. City of St. Charles, 200 F.3d 1128, 1131 (8th Cir. 1999). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c).

The ADA[3] affords protection from discrimination to any "qualified individual with a disability." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, Maziarka must show (1) that he has a disability within the meaning of the ADA, (2) that he is qualified to perform the essential functions of his job, with or without reasonable accommodation, and (3) that he suffered an adverse employment action because of his disability. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135 (8th Cir. 1999) (en banc). Discrimination includes "not making reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A). The proof necessary to establish a

---

[3]We have noted that the MHRA parallels the ADA, Wilking v. County of Ramsey, 153 F.3d 869, 872 (8th Cir. 1998), and thus we conclude that the district court properly treated Maziarka's MHRA claim as co-extensive with his ADA claims. Neither party contests this treatment on appeal.

prima facie case in discrimination cases is flexible and varies with the specific facts of each case. <u>Young v. Warner-Jenkinson Co., Inc.</u>, 152 F.3d 1018, 1022 (8th Cir. 1998).

Maziarka contends that there are genuine issues of fact about whether he is disabled within the meaning of the ADA and about whether he could perform the essential functions of the job with reasonable accommodation.

## A. Disability

The relevant statutory definition of disability in this case is: "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual. . . ." 42 U.S.C. § 12102(2)(A). Fleet Farm does not dispute that Maziarka suffers from a physical impairment, that is, a "condition . . . affecting one or more of the following body systems: . . . digestive." 29 C.F.R. § 1630.2(h). According to the regulations that guide the interpretation of the ADA, an impairment is "substantially limiting" if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform such an activity compared to the general population. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, breathing, learning, and working, 29 C.F.R. § 1630.2(i), as well as sitting, standing, lifting, and reaching. <u>Fjellestad v. Pizza Hut of America, Inc.</u>, 188 F.3d 944, 948 (8th Cir. 1999).

Several factors are considered in determining whether a person is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact. 29 C.F.R. § 1630.2(j)(2)(i)-(iii). To be substantially limited in the life activity of working, a plaintiff must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having

comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Inability to perform one particular job does not constitute a substantial limitation on working. Id. A plaintiff must show that because of his impairment he has suffered a significant reduction in meaningful employment opportunities. Webb v. Garelick Mfg. Co., 94 F.3d 484, 488 (8th Cir. 1996).

Fleet Farm contends that because the flare ups in Maziarka's condition are too infrequent to constitute a substantial limitation, his periods of incapacitation do not demonstrate that he is substantially limited in any life activity. The determination of disability is a highly fact-intensive one, Land v. Baptist Med. Ctr., 164 F.3d 423, 425 (8th Cir. 1999), and thus a conclusion that a certain condition, or a particular manifestation of a condition, does not substantially limit a particular plaintiff does not foreclose a determination that another individual with the same or analogous condition may be disabled within the meaning of the ADA. Otting v. J.C. Penney Co., 223 F.3d 704, 710-11 & n.4 (8th Cir. 2000) (discussing epilepsy). The cases on which Fleet Farm relies, therefore, do not foreclose Maziarka's claim. E.g., Zirpel v. Toshiba America Info. Sys., Inc., 111 F.3d 80, 81 (8th Cir. 1997) (panic disorder "very manageable;" attacks infrequent and mild); Todd v. Academy Corp., 57 F. Supp. 2d 448, 453 (S.D. Tex. 1999) (epilepsy under control; seizures very brief and plaintiff aware of their approach).

Maziarka's irritable bowel syndrome is chronic, incurable, and unusually severe. Although he is afflicted with flare ups only a few days per month on average, he may also be incapacitated for longer periods of time. These periods of incapacitation are unpredictable and will vex Maziarka for the rest of his life. During his periods of incapacity, Maziarka is prevented from leaving his home to go to work, performing manual tasks, or interacting with supervisors, co-workers, and store patrons, and is afflicted with substantial pain and intestinal discomfort. When compared to the average person in the general population, we cannot say that Maziarka's limitations are solely

"moderate" ones.  See Weber v. Strippit, Inc., 186 F.3d 907, 914 (8th Cir. 1999) (discussion of moderate limitation), cert. denied, 120 S. Ct. 794 (2000).

Maziarka has also presented evidence that he is precluded from performing a broad range of jobs, not simply the receiving job at Fleet Farm.  He offered the affidavit of John Peterson, a rehabilitation consultant, who determined that Maziarka's unexpected absences would preclude him from a range of jobs in smaller organizations, or in departments with a small number of employees.  Peterson also opined that Maziarka would be unable to perform jobs that would require him to work independently, respond immediately to emergencies, or be available for employment at unpredictable times of unpredictable duration, such as the jobs of fire-fighter and truck driver.  Maziarka is now taking college classes and training for law enforcement work, but his job history for the past decade shows a series of what have apparently been short-term jobs.  Maziarka has reported that his current part-time job as a jailer at a county detention facility is flexible enough that he has not yet had any difficulty because of his condition.

A permissible inference from the foregoing evidence is that Maziarka is substantially limited in the life activity of working.  Indeed, as the (former) store manager succinctly stated, "[d]ependability is a priority when it comes to working." This is not a case, then, in which a plaintiff's condition causes difficulty with a single aspect of a single job position.  E.g., Castro v. Local 1199, Nat'l Health & Human Servs. Employees Union, 964 F. Supp. 719, 725 (S.D.N.Y. 1997).  Accordingly, we conclude that Maziarka has presented evidence that would allow a trier of fact to find Maziarka to be disabled--substantially limited in the major life activity of working-- within the meaning of the ADA.

## B. Essential Functions of his Job

To be a "qualified individual" within the meaning of the ADA, Maziarka must (1) possess the requisite skill, education, experience, and training for his position; and (2) be able to perform the essential job functions, with or without reasonable accommodation. Moritz v. Frontier Airlines, Inc., 147 F.3d 784, 786-87 (8th Cir. 1998). Only the second part of the definition is in question here. Although an ADA plaintiff retains the ultimate burden of proving that he is a qualified individual, an employer who disputes the plaintiff's claim that he can perform the essential functions must put forth evidence establishing those functions. Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1113 (8th Cir. 1995). An essential function may be established by evidence that includes:

> (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs.

Moritz, 147 F.3d at 787 (internal quotation marks omitted).

Maziarka contends that attendance is not an essential function of the job and that Fleet Farm could and should have allowed him to take unscheduled leave without pay when his syndrome flared up, followed by his making up the time when he had recovered. He argues that because shipments of merchandise arrived sufficiently prior to the time they were needed on the store shelves, his unexpected absence for a day or two did not disrupt the store's inventory schedule. He points to the assistant manager's statement that he called other employees to fill in for an absent employee on only one or two occasions. Fleet Farm counters by pointing out that an essential function of the job of a receiving clerk is to be present when merchandise arrives. Fleet Farm notes

that the only accommodation Maziarka requested was time off without pay when his sick leave was used up.

We conclude that although this case does not involve a situation in which "attendance was so erratic as to make [the plaintiff] unqualified for any position," Carr v. Reno, 23 F.3d 525, 530 (D.C. Cir. 1994), Maziarka has failed to present a triable issue of fact about whether he could perform the essential functions of his job with reasonable accommodation. We have noted that dependable attendance is often an essential part of a job. Buckles v. First Data Resources, Inc., 176 F.3d 1098, 1100-01 (8th Cir. 1999); Moore v. Payless Shoe Source, Inc., 187 F.3d 845, 848 (8th Cir. 1999). In discussing the essential functions of a housekeeping aide position, the Eleventh Circuit stated that "[u]nlike other jobs that can be performed off site or deferred until a later day, the tasks of a housekeeping aide by their very nature must be performed daily at a specific location." Jackson v. Veterans Admin., 22 F.3d 277, 279 (11th Cir. 1994). Maziarka's job similarly requires that he be capable of regular and predictable attendance at a specified location in order to perform the tasks of a receiving clerk.

A number of factors support Fleet Farm's contention that regular attendance was an essential function of the job of Maziarka's position. See Moritz, 147 F.3d at 787 (describing employer expectations, consequences of accommodation, and limited number of available employees as some pertinent factors). Few Fleet Farm employees were trained to work in the receiving department. See 29 C.F.R. § 1630.2(n)(2)(ii) (limited number of employees is relevant inquiry). The receiving department had only three or four full-time employees, including Maziarka, and most would be already scheduled to work on any given day. Additionally, Fleet Farm's written job description for receiving clerk, prepared before Maziarka was hired, and the seriousness with which Fleet Farm treated Maziarka's absences (e.g., numerous warnings, meetings, and discussions), indicate that dependability and attendance are essential for receiving clerks. The job description states that the primary responsibility of a receiving clerk

-9-

is to receive, inspect, and record merchandise when it arrives. By its very nature, a receiving clerk's job is to be present to receive and sort merchandise upon arrival and to interact with freight drivers. Clerks are then judged on their speed, accuracy, and follow-up. See Moritz, 147 F.3d at 787 (job description and nature relevant).

Maziarka's suggested accommodation--that he be allowed to be absent and make up the time missed later--does not provide a reasonable alternative in this situation. His proposed accommodation does not address the crucial problem--the unpredictability of Maziarka's absences--which left Fleet Farm unable to rely on its schedule in order to efficiently receive and process merchandise. His proposal instead presumes that regular, predictable attendance is not an essential function of his job. "It is well settled that an employer is under no obligation to reallocate the essential functions of a position that a qualified individual must perform." Moritz, 147 F.3d at 788. Fleet Farm is also not obligated to hire additional employees or reassign existing workers in order to compensate for Maziarka's unexpected absences. Id. Maziarka has suggested no other accommodation that could overcome the difficulty of his unpredictable absences.

Accordingly, because Maziarka has failed to present evidence that would allow a fact-finder to conclude that he can perform the essential functions of his position with reasonable accommodation, we conclude that Fleet Farm was entitled to summary judgment.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-