Susan MALLON, Plaintiff,

v.

U.S. PHYSICAL THERAPY, LTD., a Nevada Corporation and Twin Cities Physical Therapy, a Limited Partnership, Defendants.

No. 03–2506 (JRT/FLN).

United States District Court,
D. Minnesota.

Jan. 21, 2005.

Adam A. Gillette, Nichols Kaster & Anderson, PLLP, Minneapolis, MN, for plaintiff.

Kirsten J. Hansen, Arthur Chapman Kettering Smetak & Pikala, P.A., Minneapolis, MN, for defendants.

## MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TUNHEIM, District Judge.

Defendants, U.S. Physical Therapy ("USPT") and Twin Cities Physical Therapy ("TCPT") (collectively "defendants"), employed plaintiff, Susan Mallon ("Mallon"), as an office manager until defendants terminated her employment on April 9, 2002. Mallon brings this action against the defendants for disability discrimination, failure to accommodate her disability, and age discrimination in violation of the Minnesota Human Rights Act ("MHRA"), Minn.Stat. § 363A.08; for violating the Minnesota whistleblower statute, Minn. Stat. § 181.932; and for violating the anti-retaliation provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a). Defendants move for summary judgment on all of Mallon's claims. For the reasons stated below, the Court denies defendants' motion as to Mallon's claims of disability discrimination and failure to accommodate, and grants defendants' motion as to Mallon's claims of age discrimination and retaliation.

### BACKGROUND

Mallon began working for TCPT as the office manager in 1995 at the age of forty-seven. In 1995, TCPT employed three individuals: Mallon; Nannette Washko ("Washko"), part owner and full-time physical therapist; and a part-time physical therapist. Between 1995 and 2002, TCPT employed a variety of full– and part-time employees. From 2000 to 2002, TCPT generally employed Mallon, Washko, and Pat Sullivan ("Sullivan"), a receptionist who worked in the afternoon three days a week.

Mallon's primary duties as office manager included scheduling patients, submitting insurance claims, organizing files, handling accounts receivable, undertaking collections, ordering office equipment, and assisting with receptionist duties. USPT provided human resources, accounts payable, and marketing functions for TCPT. USPT also supplied the company compliance manual and company handbook.

Mallon did not enroll in TCPT's health insurance plan when she began working for the company. As a result, Mallon was paid a monthly amount to compensate her for not enrolling in the plan. USPT then decided to discontinue compensating employees for not taking insurance and, instead, raised Mallon's pay by $1 per hour and granted Mallon an extra week of paid vacation.

According to Mallon, Washko, who is younger than Mallon and Sullivan, would make comments about Mallon's and Sullivan's ages. Washko allegedly stated that older workers have more health problems and need to go to the doctor more often, and that she would never hire anyone older than herself again. The defendants assert that Washko made her comments out of frustration at Sullivan's refusal to learn to use the computer. Mallon informed USPT about these comments.

In early 2000, Mallon was diagnosed with spinal stenosis and degenerative disk disease. Spinal stenosis is a disorder involving a narrowing of the spine that results in pressure on the spinal cord and/or nerve roots. Symptoms include weakness, pain in the legs while sitting, and abnormal bowel and bladder function. As a result of her condition, Mallon asserts that she cannot sit or stand for long periods, cannot lift

more than ten pounds, and cannot walk for extended periods. Mallon also maintains that Washko was aware of Mallon's back problems and Mallon's need to stand and move when she had been sitting for too long. Despite her disorder, Mallon alleges that she was physically capable of performing her job and that her back never required her to take off more time than USPT allowed under its policies.

In November 2001, Mallon began to suspect that the time she spent at doctor's appointments was being improperly considered sick time in violation of the FLSA. When Mallon had a doctor's appointment for her back, Washko would request that Mallon deduct time from her time card even though Mallon would make up the hours she was gone. Mallon communicated her concerns to Washko and USPT's human resources department.

According to Mallon, Washko's attitude towards her changed after she complained about the FLSA violations. Washko allegedly told Mallon that USPT wrote her up for violating the FLSA and that Mallon's complaint had "opened up a huge can of worms." Subsequently, Washko no longer allowed employees to leave early or take days off, and Mallon was no longer able to take an extra week of vacation. Defendants assert that Washko became stricter regarding wage and hour rules to comply with the FLSA and Medicare provisions. According to Mallon, Washko continued to make deductions on her time card for doctor's appointments even though Mallon always made up the time. Mallon again notified USPT about the situation.

After Mallon complained about the FLSA issue, she learned that she needed surgery on her back. In November 2001, Mallon requested, and was approved for, a two-month leave of absence from TCPT and Washko hired a temporary replacement for Mallon. In January 2002, Mallon received her yearly evaluation. Although her prior evaluations had generally been good, in the January 2002 evaluation, Washko expressed concerns with Mallon's attendance. In February 2002, Mallon again submitted a written request for time off to have her back surgery after health insurance changes delayed her surgery. The form notes a leave request from April 9, 2002 to June 9, 2002. The form also states that the end date is uncertain because the doctor said that recovery would be two months or longer. Washko originally approved the leave request.

Washko later overheard Mallon telling a patient that she would probably be out for three months for surgery. When Washko asked Mallon about the three-month leave, Mallon replied that her doctor thought she might take longer than two months to heal. According to defendants, the temporary replacement worker was unable to stay for three months, and USPT and Washko did not find another temporary worker. USPT and Washko then determined that Mallon's request for a three-month leave of absence would be a hardship, and they denied her leave request.

On March 28, 2002, Mallon discovered a draft letter on Washko's desk indicating that she would be terminated on April 8, 2002, one day before her surgery. Mallon confronted Washko and they argued. Washko allegedly told Mallon that she was being terminated because her leave would be a hardship for the clinic. Mallon informed Washko that without income and short-term disability benefits, Mallon would have to forego the surgery and she would not take the leave of absence. Washko allegedly refused to rescind the termination unless Mallon could guarantee that she would never be absent from TCPT again. Washko reported the incident to USPT's human resources department and a decision was made to termi-

nate Mallon. USPT terminated Mallon's employment by letter dated April 9, 2002, stating that Mallon was being terminated for excessive absenteeism.

On March 20, 2003, Mallon brought this action alleging disability discrimination and failure to accommodate, age discrimination, and retaliation for reporting that Washko was violating the FLSA. Defendants move for summary judgment on all claims.

## ANALYSIS

### I. Standard of Review

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### II. Disability Discrimination

■ Mallon alleges that the defendants violated the MHRA by discriminating against her on the basis of her disability. The MHRA prohibits discrimination against a qualified individual with a disability. Minn.Stat. § 363A.08, subd. 2(1)(2). Courts analyze MHRA claims under the traditional burden-shifting *McDonnell Douglas* framework. *Snow v. Ridge-*

*view Med. Ctr.,* 128 F.3d 1201, 1205 (8th Cir.1997); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once the plaintiff presents a prima facie case of discrimination, the defendants must present evidence of a legitimate, non-discriminatory reason for terminating the plaintiff. *Snow,* 128 F.3d at 1205. If the defendants make this showing, the plaintiff must then demonstrate that the employer's proffered reason is a pretext for unlawful discrimination. *Id.* at 1206.

#### A. Prima Facie Case

■ Under the *McDonnell Douglas* burden-shifting analysis, Mallon must establish a prima facie case of disability discrimination by showing that she "(1) was 'disabled' within the meaning of the [MHRA]; (2) was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination." *Snow,* 128 F.3d at 1206.

#### 1. Disabled

■ According to the MHRA, a disabled person is one who "(1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment." Minn.Stat. § 363A.03, subd. 12. The MHRA does not define physical impairment, so Minnesota courts look to federal laws and regulations when construing the MHRA. *See Fahey v. Avnet, Inc.,* 525 N.W.2d 568, 573 (Minn.Ct.App.1995); *see also Kammueller v. Loomis, Fargo & Co.,* 383 F.3d 779, 784 (8th Cir.2004) (noting that courts analyze the MHRA and Americans with Disability Act ("ADA") un-

der essentially the same standard).[1] The Equal Employment Opportunity Commission regulations define a physical impairment, in part, as any physical disorder or condition affecting the neurological or musculoskeletal systems. 29 C.F.R. § 1630.2(h). Courts consider several factors when determining an impairment's effect on a major life activity including: (1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact. *Maziarka v. Mills Fleet Farm, Inc.*, 245 F.3d 675, 679 (8th Cir.2001) (citing 29 C.F.R. § 1630.2(j)(2)(i)-(iii)). Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The Eighth Circuit has included "[s]itting, standing, lifting and reaching" as major life activities. *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 948 (8th Cir.1999). To determine whether a person is materially limited in the major life activity of working, courts consider "(a) the number and type of jobs from which the impaired individual is disqualified, (b) the geographic area to which the applicant has reasonable access, (c) the applicant's own job expectations and training, (d) the criteria or qualifications in use generally, and (e) the types of jobs to which the rejection would apply." *Hoover v. Norwest Private Mortgage Banking*, 632 N.W.2d 534, 543 (Minn. 2001) (quoting *State by Cooper v. Hennepin County*, 441 N.W.2d 106, 111 (Minn. 1989)).

Mallon asserts that she has spinal stenosis and degenerative disk disease, a permanent condition affecting her spine. She maintains that these physical impairments materially limit her in the major life activities of working, lifting, and walking. Mallon argues that she is qualified only for a relatively narrow class of jobs including those in office management, medical transcription, and retail sales, and that her disorder disqualifies her from most of these positions. Additionally, Mallon asserts that she cannot lift more than ten pounds or walk more than fifteen minutes, and will never be able to do so without corrective surgery.

■ Viewing the facts in the light most favorable to Mallon, genuine issues of material fact exist as to whether Mallon is disabled under the MHRA. Neither side offers any doctor or expert testimony regarding Mallon's limitations. Still, based on the limited evidence of Mallon's alleged disability in the record, a reasonable jury could find that Mallon's spinal stenosis materially limits her ability to lift, walk, and work in a broad range of jobs, and therefore, find that she is disabled within the meaning of the MHRA.

### 2. Qualified

■ In order to prove a prima facie case of disability discrimination, Mallon must next demonstrate that she was qualified to perform the essential functions of the job, with or without reasonable accommodation. *Snow*, 128 F.3d at 1206. To show that she was qualified, Mallon "need only establish that she met the minimum objective qualifications for the job." *Hoover*, 632 N.W.2d at 544. An employer who disputes the plaintiff's claim that she is qualified must put forth evidence establish-

---

1. The language of the MHRA and ADA is essentially the same, except that the ADA requires a more stringent "substantial limitation" standard while the MHRA only requires a "material limitation." *Kammueller*, 383 F.3d at 784. Courts, however, still use the relevant ADA regulations as a guide for determining whether an impairment materially limits a major life activity. *Carlsen v. Green Thumb, Inc.*, 2004 WL 234406, at *4 (D.Minn. Feb.4, 2004).

ing the essential functions. *Maziarka*, 245 F.3d at 680. In this case, the defendants argue that regular attendance was an essential function that Mallon could not satisfy.

▮ Under certain circumstances, regular attendance may be an essential job function. *Id.* at 681 (finding attendance an essential job function that could not be accommodated where the department only had a few employees and the employee's absences were unpredictable). In determining whether regular attendance is an essential job function, courts consider several factors including: the nature of the job, the number of available employees, the written job description, and the manner in which the employer treats absences. *See id.* at 681. If the court finds that attendance is an essential job function, the employee is qualified if the employee can satisfy that function with or without reasonable accommodation. *Snow*, 128 F.3d at 1206.

▮ In the present case, the defendants do not dispute that Mallon was qualified prior to her spinal stenosis diagnosis. The defendants only argue that Mallon was not qualified after her diagnosis because she could not meet TCPT's attendance expectations. TCPT, however, provided its employees with sick time, paid time off, and vacation, and Mallon never exceeded the amount of leave time to which she was entitled. In addition, TCPT was willing to accommodate Mallon's physical impairment-related absences in the past—it granted Mallon a two-month leave of absence for her surgery and found a temporary replacement for that time period. Under these circumstances, a reasonable jury could find that Mallon satisfied her employer's attendance requirement, with or without reasonable accommodation, and was therefore qualified to do her job.

### 3. Adverse Employment Action

▮ The third and final prong of Mallon's prima facie case of discrimination is proof of an adverse employment action. *Id.* The defendants do not dispute that they terminated Mallon. Given the evidence as presented, a reasonable jury could find that the defendants terminated Mallon on account of her alleged disability. As a result, Mallon has met her burden of establishing a prima facie case of discrimination.

### B. Legitimate, Non–Discriminatory Reason for Termination

▮ Having established a prima facie case of discrimination, the burden shifts to the defendants to articulate a legitimate, non-discriminatory reason for Mallon's discharge. *Id.* The defendants argue that they terminated Mallon for excessive absenteeism as recorded in her performance review and termination letter. An employer may have a legitimate and non-discriminatory reason for terminating an employee where the "absenteeism plainly affected her job performance." *Lindgren v. Harmon Glass Co.*, 489 N.W.2d 804, 809 (Minn.Ct.App.1992). In some instances, "[a]ttendance problems may be a legitimate basis for an employer's decision to terminate an employee" even where the disability caused the problems. *Id.* at 808. Given that TCPT has a small staff and that Mallon's job responsibilities required her attendance at the clinic, the Court finds that defendants have met their burden of showing that excessive absenteeism was a legitimate and non-discriminatory basis for Mallon's termination.

### C. Pretext

▮ Since the defendants met their burden of asserting a legitimate, non-discriminatory reason for Mallon's termination, the burden shifts back to Mallon to

show that the defendants' alleged reason is merely pretextual. *Snow,* 128 F.3d at 1206. While the Court recognizes that regular work attendance is important, especially for an employer with few employees, small companies are not free to terminate their employees any time they are absent from work. This is especially true when the absenteeism is due to a disability. Given that Mallon did not exceed the amount of leave to which she was entitled, and that TCPT was willing and able to find a temporary worker to cover Mallon's position for two months, it is possible that a reasonable jury could find that Mallon's absenteeism was not a burden on TCPT and that the defendants' reason for terminating Mallon due to excessive absenteeism was merely pretextual.

Accordingly, based on the above analysis, the Court denies defendants' motion for summary judgment as to Mallon's claim of disability discrimination.

### III. Reasonable Accommodation

 Mallon also alleges that the defendants failed to make a reasonable accommodation for her disability by granting her a three-month leave of absence. Under the MHRA, an employer commits unlawful discrimination if it fails to make reasonable accommodations to the known physical or mental limitations of a qualified disabled person. Minn.Stat. § 363A.08, subd. 6. A qualified disabled person is "a disabled person who, with reasonable accommodation, can perform the essential functions" of the job. Minn.Stat. § 363A.03, subd. 36. A reasonable accommodation may include, but is not limited to, "job restructuring, modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, and the provision of aides on a temporary or periodic basis." Minn. Stat. § 363A.08, subd. 6. If an employer

contends that the plaintiff is not a qualified disabled person, "the employer bears the burden of showing it was reasonable to conclude that the disabled employee could not have met the requirements of the job, even with reasonable accommodation." *Hoover,* 632 N.W.2d at 547 n. 10. The employer may also defeat a reasonable accommodation claim by showing that the accommodation would impose an undue hardship on the business. Minn.Stat. § 363A.08, subd. 6. To determine whether accommodating a disabled employee presents an undue hardship, courts consider the following factors:

(1) the nature and cost of the action; (2) the financial resources of the site involved, the number of persons employed at the site, the effect on expenses and resources, legitimate safety requirements ..., or the impact otherwise of the action upon the operation of the site; (3) the geographic separateness, and the administrative and financial relationship of the site to the corporation; (4) if applicable, the overall financial resources of the parent corporation and the number of facilities; and (5) if applicable, the type of operation of the parent corporation.

*Roberts v. KinderCare Learning Ctrs., Inc.,* 86 F.3d 844, 846 (8th Cir.1996).

As discussed above, Mallon created a reasonable question of fact that she is disabled and that TCPT knew of her condition. The issue then is whether Mallon's leave request was reasonable and whether it would impose an undue hardship on the defendants. Mallon requested a two-month leave with the caveat that she may need a third month of leave to recover from her surgery. The defendants argue that TCPT could not operate for such an extended period of time without an office manager because it was a small clinic and Medicare required two employees on duty

when treating a patient. The defendants further assert that Mallon's request was unreasonable because they could not find a temporary worker for the third month.

■ Although the Court recognizes that leaves of absence may have a significant impact on small companies, the record suggests that the defendants were able to reasonably accommodate leave requests. In November 2001, TCPT approved Mallon's first request for a two-month leave of absence and was able to find a temporary replacement. Mallon's health insurance caused a delay in her surgery and in February 2002, she submitted another request for a two-month leave. The defendants again granted the request. Mallon later indicated that she might need a longer leave if she had not fully recovered by the end of the two-month period. TCPT then rescinded the leave accommodation even though Mallon might have returned to work after two months. The defendants argue that they could not find a temporary worker to stay beyond two months, however, the record provides little evidence that they made a good faith effort to find another temporary replacement. Given that the defendants granted a two-month leave twice, a reasonable jury could find that Mallon's leave request was reasonable and that it did not place an undue hardship on TCPT.

Accordingly, the Court denies the defendants' motion for summary judgment as to Mallon's claim of failure to accommodate her disability.

## IV. Age Discrimination

■ Mallon further alleges that the defendants terminated her in violation of Minn.Stat. § 363A.08, subd. 2(c), which prohibits discrimination on the basis of age. A plaintiff can prove intentional discrimination by presenting direct evidence of age-based employment discrimination or through circumstantial evidence using the *McDonnell Douglas* burden-shifting framework. *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1331–32, 1338 (8th Cir. 1996). Under the *McDonnell Douglas* framework, Mallon must establish: (1) that she was a member of a protected class; (2) that she was qualified for the position; (3) that she was terminated despite her qualifications; and (4) that she was replaced by a younger worker. *Ward v. Employee Dev. Corp.*, 516 N.W.2d 198, 201 (Minn.Ct. App.1994).

■ Mallon argues that Washko's age-based comments along with Mallon's termination provide sufficient evidence of age-based discrimination. In reviewing evidence of alleged age discrimination, courts must regard disparaging comments carefully. "[N]ot all comments that reflect a discriminatory attitude will support an inference that an illegitimate criterion was a motivating factor in an employment decision." *Hermeling v. Montgomery Ward & Co.*, 851 F.Supp. 1369, 1378 (D.Minn.1994) (citation omitted). Courts must distinguish between comments that demonstrate discriminatory animus in the employment decision-making process, and stray remarks in the workplace. *Id.*

■ In the present case, Washko made her comments out of frustration with Sullivan's refusal to learn the computer. The comments were stray remarks, which do not support an inference that age was the motivating factor in Mallon's termination. In addition, Mallon fails to present evidence as to when or why Washko, who hired both Mallon and Sullivan, developed age-based discriminatory animus toward Mallon. Moreover, Mallon fails to make a prima facie claim of age discrimination because the record does not indicate that the defendants replaced Mallon with a younger worker. Having reviewed the record, the

Court finds that Mallon fails to present sufficient evidence for a reasonable jury to infer that Mallon's age actually motivated the defendants' decision to terminate her.

Accordingly, the Court grants the defendants' motion for summary judgment as to Mallon's claim of age-based discrimination.

## V. Retaliation

■■■ Lastly, Mallon alleges retaliation under Minnesota statute and the FLSA. Courts apply the three-part *McDonnell Douglas* burden-shifting analysis in resolving retaliation claims under Minn.Stat. § 181.932 and the FLSA. *Nichols v. Metro. Ctr. for Indep. Living, Inc.*, 50 F.3d 514, 516 (8th Cir.1995). To survive summary judgment, Mallon must demonstrate a prima facie case of retaliation by demonstrating: (1) that she engaged in protected conduct; (2) that she suffered an adverse employment action; and (3) that a causal connection exists between the two. *Ring v. Sears, Roebuck, & Co.*, 250 F.Supp.2d 1130, 1135 (D.Minn. 2003). Once Mallon establishes a prima facie case, the burden shifts to the defendants to produce a legitimate non-retaliatory reason for the termination. *Id.* If the defendants provide a legitimate non-retaliatory reason, the burden shifts back to the plaintiff to demonstrate that the articulated reason is a pretext for unlawful discrimination. *Id.*

■■■ Mallon asserts that after she reported Washko for allegedly violating the FLSA, the defendants retaliated against her by giving Mallon a poor performance review, taking away a week of vacation, and eventually terminating her. To the extent that Mallon asserts that TCPT retaliated against her through a poor performance review and taking away her vacation, TCPT concedes a prima facie case of retaliation. TCPT, however, responds that it had legitimate, non-retaliatory reasons for its actions. The defendants claim that to comply with the FLSA and Medicare regulations, they could no longer extend an extra week of vacation to employees like Mallon. The defendants state that they were merely complying with Mallon's request that they adhere to the wage and hour laws. Additionally, the defendants claim that Washko gave Mallon poor reviews because of Mallon's excessive absenteeism.

An employer does not escape liability merely because it offers a legitimate reason for the discharge "if an illegitimate reason 'more likely than not' motivated the discharge decision." *McGrath v. TCF Bank Sav.*, 509 N.W.2d 365, 366 (Minn. 1993) (citation omitted). Mallon, however, fails to provide sufficient evidence for a reasonable jury to find that the defendants' legitimate non-retaliatory reasons were pretextual. Mallon could not reasonably expect that the defendants would continue violating the FLSA and Medicare provisions by preserving her extra week of vacation. Additionally, absenteeism is a concern that employees should reasonably expect would be included in a performance review.

■■ To the extent that Mallon asserts that TCPT retaliated against her by terminating her employment, the Court finds that Mallon did not establish a prima facie case of retaliation because she does not show a clear causal connection between her complaints and her termination. The defendants twice granted Mallon a two-month leave before terminating Mallon five months after she reported the FLSA violations. Those actions are not consistent with Mallon's claim of retaliation, and thus, the Court finds that a reasonable jury could not find that the defendants retaliated against Mallon in violation of Minn.Stat. § 181.932 or the FLSA.

Accordingly, the Court grants the defendants' motion for summary judgment as to Mallon's claim of retaliation under Minnesota statute and the FLSA.

### ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment [Doc. No. 27] is **DENIED IN PART** and **GRANTED IN PART**:

1. Defendants' motion is **DENIED** with respect to the disability and reasonable accommodation claims.

2. Defendants' motion is **GRANTED** with respect to the age discrimination and retaliation claims.